STATE

v.

David GONGOLESKI.

No. 2009–120–C.A.

Supreme Court of Rhode Island.

March 18, 2011.

the Supreme Court pursuant to an order directing the parties to show cause why the issues raised in this appeal should not summarily be decided. After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

Christopher R. Bush, Department of Attorney General, for State.

Paula Rosin, Office of the Public Defender, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Chief Justice SUTTELL, for the Court.

On June 21, 2007, a disturbance in the Gongoleski household over dirty dishes led to a physical confrontation between a father and his forty-year-old son, as a result of which the son, David Gongoleski (defendant), severely cut his hand. This familial kerfuffle eventually culminated in the defendant's conviction by a jury for vandalism and disorderly conduct. He now appeals from the judgment of conviction on the sole ground that the trial justice abused her discretion by admitting, for impeachment purposes, evidence of the defendant's prior convictions for assault and for violation of a no-contact order. The defendant asserts that evidence of the convictions added little, if any, probative value on the issue of his credibility as a witness, and that he was enormously prejudiced by their admission. This case came before

I

### Facts and Procedural History

On January 4, 2008, defendant was charged in a four-count criminal information with two counts of simple assault (domestic) (counts 1 and 2), one count of vandalism (domestic) (count 3), and one count of disorderly conduct (domestic) (count 4). A two-day trial took place in October 2008. The pertinent evidence adduced at trial is set forth below.

On the evening of June 21, 2007, defendant's parents, Margaret and Richard Gongoleski, were watching television in the living room of their North Smithfield home when defendant, who resided at the same address, came into the kitchen. Richard Gongoleski testified that his son "was slamming refrigerator doors and other doors, and he got a little boisterous," and that he could tell by defendant's "attitude" that he "was a little intoxicated." Mr. Gongoleski further testified that he "confronted [defendant] in the kitchen" and told him that he had "had enough" and "didn't want [defendant] in the house." According to Mr. Gongoleski, when defendant refused to leave, Mr. Gongoleski "pushed him out the door and closed the door," telling defendant that he "can stay on the porch." "[H]alf a minute after," Mr. Gongoleski continued, defendant "punched the window in the door, reached

in and opened up the glass that closes the door." Mr. Gongoleski testified that defendant then came back into the kitchen and "punched [him] in the chest" with a "[c]losed fist" a "[c]ouple of times," although Mr. Gongoleski said that defendant did not punch him "hard." According to Mr. Gongoleski, defendant's hand was "bleeding severely" from "punching in the window" and left "two red splotches" on the white T-shirt that Mr. Gongoleski was wearing that evening. The defendant then went upstairs, at which point Mr. Gongoleski told him that he "better come down and clean" up the mess he had made in the kitchen.

The defendant's mother, Margaret Gongoleski, also testified at defendant's trial. Mrs. Gongoleski testified that on the evening of June 21, 2007, while she and her husband were watching television, defendant came downstairs and "was pretty upset, maybe because there [were] dishes in the sink." Mrs. Gongoleski believed that defendant had been drinking because he "was very boisterous with his voice" and was acting similar to the manner in which he had acted when he "was under the weather" in the past. According to Mrs. Gongoleski, she and her husband "didn't appreciate [defendant's] demeanor in the house," which included defendant "slamming the refrigerator door;" she said that, after about five or ten minutes of it, Mr. Gongoleski asked defendant to leave.[1] Mrs. Gongoleski testified that her husband "put [defendant] out of the house," and that "two seconds" later defendant "broke the little pane of glass in the window on the back kitchen door, cutting his wrist, and [came] into the house." When Mrs. Gongoleski heard the glass break, she "came from the living room into the kitchen and saw [defendant] pushing [his father] aside[ ] and blood * * * spurting everywhere." [2] Blood spurted over Mrs. Gongoleski's glasses and pajamas, and it was "evident[ ]" to her that "when [defendant] broke that glass he did something to an artery in his arm." Mrs. Gongoleski testified that after defendant pushed Mr. Gongoleski out of the way and ran upstairs, Mr. Gongoleski "asked [defendant] to come back down to pick up the glass, and when [defendant] did the blood had spurted so much." Mrs. Gongoleski further testified that she told defendant "to go back up and call 911" because "he needed some medical help."

Patrolman Frank Gallagher of the North Smithfield police testified that, on the evening of June 21, 2007, he responded to a call at the Gongoleskis' house and, upon arrival, observed defendant standing "in the driveway with a garment over his right hand." The defendant appeared to Patrolman Gallagher "to have sustained an injury." Patrolman Gallagher also testified that defendant's slurred speech, his bloodshot and watery eyes, and a moderate odor of alcohol coming from his breath led him to believe that defendant was intoxicated.

Before defendant took the stand in his own defense, the trial justice heard arguments from both parties about whether defendant's prior convictions for assault and for violation of a no-contact order could be used to impeach him. The state

---

1. Mrs. Gongoleski testified that she was in another room when Mr. Gongoleski asked defendant to leave, but that she heard him do so.

2. Later in her testimony, Mrs. Gongoleski admitted that, in her police statement, she described the same incident as defendant "punch[ing]" Mr. Gongoleski in the chest. Also, on cross-examination, Mrs. Gongoleski referred to the same altercation as defendant "hit[ting]" Mr. Gongoleski as well as defendant "pushing [Mr. Gongoleski] aside" with "a closed fist."

argued that, because of a dearth of physical evidence, the case depended on the credibility of the testimony offered by the parties, and that admission of defendant's convictions was appropriate to impeach his testimony. In response, defendant argued that the potential prejudice from admitting the convictions outweighed any relevance that they may have to impeaching defendant's credibility. The trial justice ruled that both convictions could be admitted, reasoning that both matters were "very recent in time" and that the state had "a right to show the convictions for purposes of credibility" because the case was "going to come down to credibility between [defendant] and essentially his father." The trial justice then expressed her "concern[ ]" about "the nature of the convictions and the prejudice that [they] may have," and accordingly instructed the state not to refer to the convictions as "domestic" and not "to refer to the victims of the case as mother and father."[3]

The defendant testified in his own defense that on the evening in question, he drank eight ounces of beer in his bedroom before coming into the kitchen and discovering a three-day-old "mess in the sink." The defendant testified that he cleaned up the mess by arranging things in the dishwasher and moving around pots and pans. The defendant admitted that he "banged the dishes" in the process and that his father heard him "cussing a couple times." The defendant further testified that after he "finally got [the kitchen] clean," his father came into the kitchen and told him that he could not take it anymore and

wanted defendant to "get out right now." At that point, defendant proceeded to walk upstairs "to let [his father] cool off," but when he was halfway up the stairs, defendant testified, his father grabbed him and threw him on his back. The defendant accused his father of assaulting him, and his father then threw him out the door. Once outside, defendant broke the window and unlocked the door to get back inside the house. The defendant testified that as he was walking by his father, "[b]lood squirted out [of his] hand and hit [his father] on the shirt." According to defendant, his father then came at him as if "he was going to choke" him. In response to a question about whether he punched his father, defendant testified "[n]o, never touch—I never hit nobody in my life." The defendant testified that he then went upstairs, called the police,[4] wrapped the cut on his hand with "a couple of tube socks," and went outside to wait for the police and the rescue to arrive.

On cross-examination, the state introduced evidence of defendant's prior convictions to impeach his earlier statement that he "never hit nobody in [his] life." The trial justice instructed the jury that the testimony concerning defendant's convictions could be used only in evaluating his credibility as a witness.

The jury acquitted defendant of one count of simple assault and convicted him of vandalism and disorderly conduct.[5] The trial justice denied defendant's motion for a new trial and sentenced him to five years, one year to serve and four years suspended, with probation, on the vandal-

---

3. The prior convictions also involved defendant's parents. The trial justice reasoned that to allow the state to refer to the convictions as anything beyond "just simple convictions of assault and violation of no contact order * * * would be prejudicial to this defendant since he's here on those same charges."

4. The defendant testified on cross-examination that "[n]obody told [him to] call 911" and that he did so on his own accord.

5. The state dismissed the second count of simple assault pursuant to Rule 48(a) of the Superior Court Rules of Criminal Procedure.

ism count (count 3), and to a concurrent six-month suspended sentence on the disorderly conduct count (count 4). The trial justice also ordered that defendant participate in an alcohol treatment program upon release. The defendant timely appealed.

## II

### Standard of Review

 It is well settled in this jurisdiction that "[t]he trial justice is vested with a considerable degree of discretion in deciding whether or not to admit evidence of prior convictions to impeach a witness." *State v. Remy*, 910 A.2d 793, 796 (R.I. 2006). Therefore, "this Court will not overturn such a decision on appeal unless there has been an abuse of that discretion." *Id.* at 797; *see also State v. Vargas*, 991 A.2d 1056, 1060 (R.I.2010); *State v. Gillespie*, 960 A.2d 969, 980 (R.I.2008); *State v. Drew*, 919 A.2d 397, 406 (R.I.2007); *State v. Silvia*, 898 A.2d 707, 718 (R.I. 2006). "Accordingly, we may uphold a trial justice's ruling even if we would have ruled differently had we been in the trial justice's position." *Gillespie*, 960 A.2d at 980.

## III

### Discussion

 On appeal, defendant argues that the trial justice abused her discretion by admitting, for impeachment purposes, evidence of defendant's prior convictions for assault and for violation of a no-contact order. Specifically, defendant avers that the trial justice "never clearly engaged in a balancing" of the probative value of ad-

mitting defendant's prior convictions against the risk of unfair prejudice. The defendant argues that a prior assault conviction "has no bearing upon the later likelihood that a defendant will testify falsely" and that, if admitted, the jury may "use this evidence inappropriately—namely, as propensity evidence to conclude that [defendant] must be guilty of the assault upon his father because he had committed an assault in the past." The defendant argues that the trial justice's purported abuse of discretion warrants a new trial.

The state responds that the trial justice properly admitted defendant's prior convictions because they were probative on the issue of defendant's credibility. The state also argues that the trial justice clearly engaged in a balancing of the prejudicial effect versus probative value of admitting defendant's previous convictions because she precluded the state from referring to the convictions as domestic and from alluding to the identity of the victims of those convictions. Finally, the state also points to defendant's acquittal on the assault charge as proof that the jury did not improperly use his previous convictions as propensity evidence; it also asserts that, even if defendant had been convicted of assault, he still would not have been unduly prejudiced by the admitted evidence.

 Rule 609 of the Rhode Island Rules of Evidence imparts that evidence of a prior criminal conviction is admissible for impeachment purposes unless the trial justice determines that the prejudicial effect of the conviction substantially outweighs its probative value.[6] "In contrast to Rule

---

6. Rule 609 of the Rhode Island Rules of Evidence states in pertinent part:

"(a) *General Rule.* For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from

the witness or established by public record.
* * *

"(b) *Discretion.* Evidence of a conviction under this rule is not admissible if the court determines that its prejudicial effect substantially outweighs the probative value of

609 of the Federal Rules of Evidence, our Rule 609 provides that the prior conviction need not involve dishonesty, false statement, or a felony to be admissible [for impeachment purposes]." *State v. Medina,* 747 A.2d 448, 450 (R.I.2000); *see also Remy,* 910 A.2d at 798; *State v. Pailin,* 576 A.2d 1384, 1388 (R.I.1990). The rationale behind Rule 609 "is that the jury should be able to consider whether or not a person who has previously broken the law may have such disrespect for the law as to render him or her unwilling to abide by the oath requiring truthfulness while testifying." *Remy,* 910 A.2d at 798.

It is manifest from the record in this case that the trial justice engaged in a proper balancing process to determine whether defendant's prior convictions were admissible for the purpose of impeaching defendant after he chose to testify. The trial justice correctly noted that this case was "going to come down to credibility between [defendant] and essentially his father," and she explicitly considered the fact that both of defendant's convictions were "very recent in time." [7] Given this, it was reasonable for the trial justice to conclude that defendant's prior convictions had significant probative value. Importantly, the trial justice also considered the impact of the prior convictions. She stated that she was "concerned [with] the nature of the convictions and the prejudice that [they] may have," and she used her discretionary authority to limit the extent to which the state would be allowed to use them. Specifically, the trial justice prohibited the state from referring to the convic-

tions as domestic and from referring to the identity of the victims. Accordingly, we are satisfied that the trial justice appropriately calibrated the probative value of the prior convictions and the risk of unfair prejudice to defendant. We therefore detect no abuse of discretion in her decision to admit evidence of defendant's prior convictions for impeachment purposes.

The defendant also argues that the trial justice should not have admitted his prior convictions because they "were for assaultive behavior" and may have been used by the jury as propensity evidence to convict defendant of assault in this case. This argument is without merit. This Court on numerous occasions has upheld the admission of a defendant's prior convictions for impeachment purposes when such convictions were similar or identical to the crime for which that defendant was tried. *See, e.g., State v. Rodriquez,* 731 A.2d 726, 728, 731–32 (R.I.1999) (affirming trial justice's decision to allow the prosecution to use the defendant's prior convictions for assault with a dangerous weapon and robbery to impeach the credibility of the defendant, who was on trial for robbery); *State v. Taylor,* 581 A.2d 1037, 1039–40 (R.I.1990) (affirming trial justice's decision to allow the prosecution to use the defendant's prior conviction for breaking and entering in the daytime to impeach the credibility of the defendant, who was on trial for robbery); *State v. Maxie,* 554 A.2d 1028, 1029, 1031–32 (R.I.1989) (affirming trial justice's decision to allow the prosecution to use the defendant's prior convictions for attempted larceny and robbery to impeach the credi-

---

the conviction. If * * * the conviction is for a misdemeanor not involving dishonesty or false statement, the proponent of such evidence shall make an offer of proof out of the hearing of the jury so that the adverse party shall have a fair opportunity to contest the use of such evidence."

7. This Court has held that "the time between the date of the previous conviction and the date of the present trial" is "the appropriate time period to use in evaluating the remoteness of a previous conviction when determining whether or not to permit it to be used for impeachment purposes." *State v. Remy,* 910 A.2d 793, 797 (R.I.2006).

bility of the defendant, who was on trial for robbery).

The trial justice in this case had discretion under Rule 609 to admit evidence of the defendant's prior convictions for impeachment purposes. After carefully balancing Rule 609's competing interests, the trial justice concluded that the convictions' prejudicial effect did not substantially outweigh their probative value, and she admitted the convictions, albeit with a limitation on the extent to which the state could use them. The mere fact that the convictions were similar to the crime for which the defendant was on trial did not make them presumptively prejudicial. We hold, therefore, that the trial justice did not abuse her discretion in admitting, for impeachment purposes, evidence of the defendant's convictions for assault and for violation of a no-contact order.

## IV

### Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The record of the case shall be remanded to the Superior Court.