**STATE**

v.

**Windell McRAE.**

No. 2010–249–C.A.

Supreme Court of Rhode Island.

Nov. 8, 2011.

Aaron L. Weisman, Department of Attorney General, for State.

Catherine Gibran, Office of the Public Defender, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice INDEGLIA, for the Court.

The defendant, Windell McRae, appeals from a judgment of conviction for simple domestic assault. On appeal, the defendant contends that (1) the trial justice erred by denying his motion to pass the case after the complainant testified that the defendant had been drinking on the day of the assault, and (2) the trial justice abused his discretion by allowing the prosecution to impeach the defendant with evidence of seven prior convictions.

The defendant's appeal came before the Supreme Court on October 4, 2011, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After careful inspection of the Superior Court record and the written and oral submissions of the parties, we conclude that this appeal may be decided without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

## Facts and Travel

On June 12, 2008, defendant was charged with one count of domestic assault with a dangerous weapon in violation of G.L.1956 § 11–5–2[1] and G.L.1956 § 12–29–5, as amended by P.L.1997, ch. 164, § 1, and one count of domestic simple assault in violation of § 11–5–3[2] and § 12–29–5. The defendant twice previously had been convicted of domestic offenses. The charges stemmed from an altercation that occurred on November 19, 2007, between defendant and the complainant, Ms. Iniabet DelValle (Ms. DelValle). During the trial, which commenced on March 23, 2010, the state presented three witnesses, including Ms. DelValle and two police officers who initially responded to Ms. DelValle's 911 telephone call. The defendant was the only witness to testify on his behalf.

The following relevant evidence was adduced at trial. Some two or three months prior to the underlying incident, Ms. DelValle and defendant began a relationship together. While the parties dispute the exact nature and extent of their relationship,[3] it did involve Ms. DelValle spending the night at defendant's apartment on several occasions. During this time, defendant loaned a key to Ms. DelValle, which allowed her to get access to the lobby of defendant's apartment building. Ms. DelValle would then knock on defendant's apartment door to gain entry into his apartment. The relationship later deteriorated, and Ms. DelValle testified that she ultimately broke it off.

On the date of the incident, defendant telephoned Ms. DelValle and asked that she return the key to his apartment building to him. Ms. DelValle and defendant agreed that he would come to Ms. Del-

---

1. General Laws 1956 § 11–5–2(a) reads in pertinent part:
   "Every person who shall make an assault or battery, or both, with a dangerous weapon * * * or an assault or battery which results in serious bodily injury, shall be punished by imprisonment for not more than twenty (20) years."

2. Section 11–5–3(a) reads in pertinent part:
   " * * * [E]very person who shall make an assault or battery or both shall be impris-

oned not exceeding one year or fined not exceeding one thousand dollars ($1,000), or both."

3. The defendant testified that while he "was seeing [Ms. DelValle]," this relationship was "[n]ot like a girlfriend or boyfriend." Ms. DelValle, on the other hand, testified that they dated for three months and that they were sexually intimate.

Valle's daughter's apartment to retrieve the key. After defendant telephoned Ms. DelValle from outside the building to tell her he had arrived, Ms. DelValle walked outside with the key in hand. The trial testimonies diverge about exactly what happened after Ms. DelValle and defendant met on the stairs outside her daughter's apartment.

According to Ms. DelValle, an altercation ensued after she had handed the key to defendant. Ms. DelValle testified that during the altercation, defendant grabbed her by the neck, put a knife to her throat, threatened to kill her, kicked her, and ultimately banged her face into the stairs, injuring her. After a passerby intervened and stopped the assault, defendant left the scene, and Ms. DelValle returned to the apartment and called 911.

The defendant's testimony paints a different picture as to what happened at Ms. DelValle's daughter's doorstep. The defendant testified that when Ms. DelValle came down the steps, she started to hand him the key, but yanked it away, and then fell backwards on the steps. The defendant asserted that although Ms. DelValle insisted on keeping the key, he eventually freed it from her grip. The defendant denied striking Ms. DelValle or carrying a knife that day. He testified that the incident lasted approximately three minutes. According to defendant, he immediately left after the incident to go to a store to purchase lottery tickets and beer.

After less than an hour of deliberation, the jury found defendant not guilty of domestic assault with a dangerous weapon. However, defendant was found guilty of domestic simple assault. Because this conviction was defendant's third domestic conviction, he was subject to a minimum of one-year imprisonment. The trial justice sentenced defendant to ten years, with one year to serve and nine years suspended, with probation.[4] The defendant's motion for a new trial was denied on April 8, 2010. The defendant timely appealed.

## II

### Issues on Appeal

The defendant's appeal is two-fold. First, defendant contends that the trial justice should have passed the case when Ms. DelValle testified during redirect examination that defendant had been drinking on the day of the assault. According to defendant, Ms. DelValle's statement on the witness stand was not only irrelevant, but was also unfairly prejudicial. While the trial justice struck the answer and gave a cautionary instruction to the jury immediately following a sidebar conference, defendant asserts that "the instruction given did not dispel the taint" of the disputed testimony.

Secondly, defendant contends that the trial justice abused his discretion when he permitted the prosecution to impeach defendant with evidence of defendant's prior convictions. The defendant argues that because some of the previous convictions involved assaultive behavior (especially one involving domestic assault), the jury was likely to have been improperly influenced and "no doubt used this evidence inappropriately." The defendant maintains that the unfair prejudice created by allowing the admission of the previous convictions far outweighed its "minimal" probative val-

---

**4.** A portion of the Domestic Violence Prevention Act, G.L.1956 § 12–29–5(c)(1), as amended by P.L.1997, ch. 164, § 1, states in pertinent part that "[e]very person convicted of an offense punishable as a misdemeanor involving domestic violence * * * shall: * * * (ii) For a third and subsequent violation be deemed guilty of a felony and be imprisoned for a term of not less than one year and not more than ten (10) years."

ue. As such, defendant asserts that because the trial justice abused his discretion, this Court is required to reverse his conviction and remand for a new trial.

## III

### Standard of Review

■ "It is well settled that a decision to pass a case and declare a mistrial are matters left to the sound discretion of the trial justice." *State v. Suero*, 721 A.2d 426, 429 (R.I.1998); *see also State v. Lynch*, 19 A.3d 51, 60 (R.I.2011). This Court gives considerable deference to a trial justice's ruling on a motion to pass a case and declare a mistrial because the trial justice has a "front row seat," allowing him or her to "best determine the effect of the improvident remarks upon the jury." *State v. Tempest*, 651 A.2d 1198, 1207 (R.I.1995); (quoting *State v. Pailin*, 114 R.I. 725, 729, 339 A.2d 253, 255 (1975)); *see also State v. Nelson*, 982 A.2d 602, 607 (R.I.2009). As such, the trial justice's determination concerning the prejudicial effect of evidence and the jury's ability to render a fair and impartial verdict are reviewed by this Court under an abuse of discretion standard. *Nelson*, 982 A.2d at 608.

■ In regard to prior convictions, it is well settled in this jurisdiction that "[t]he trial justice is vested with a considerable degree of discretion in deciding whether or not to admit evidence of prior convictions to impeach a witness." *State v. Gongoleski*, 14 A.3d 218, 222 (R.I.2011) (quoting *State v. Remy*, 910 A.2d 793, 796 (R.I. 2006)). Therefore, "this Court will not overturn such a decision on appeal unless there has been an abuse of that discretion." *Gongoleski*, 14 A.3d at 222 (quoting *Remy*, 910 A.2d at 797); *see also State v. Vargas*, 991 A.2d 1056, 1060 (R.I.2010);

*State v. Gillespie*, 960 A.2d 969, 980 (R.I. 2008).

## IV

### Discussion

#### A

#### Testimony About Defendant's Drinking

■ The defendant argues that the trial justice erred in failing to pass the case when Ms. DelValle testified that defendant had been drinking on the day of the incident. At issue is the following dialogue that occurred during redirect examination:

"[THE PROSECUTOR]: Do you remember what the defendant was wearing that day?

"[MS. DELVALLE]: He was wearing that same sweater with black pants and a hat and a backpack, and he was drinking."

Defense counsel immediately requested a sidebar conference, during which he moved to pass the case. At sidebar, defense counsel also requested a "significant instruction" if the trial justice denied the motion to pass. The prosecutor expressed to the trial justice that she thought she previously had instructed Ms. DelValle not to talk about defendant's alcohol use. At sidebar, the prosecutor surmised that Ms. DelValle presumed that testifying about defendant's drinking was permissible because earlier cross-examination of Ms. DelValle elicited testimony that she and defendant had used crack cocaine together. The trial justice sustained defense counsel's objection to the testimony but ultimately declined to pass the case. After the sidebar conference the trial justice struck the offending testimony and instructed the jury to disregard Ms. Del-

Valle's answer pertaining to defendant's drinking.[5]

▬ The defendant argues that this remark by Ms. DelValle may have induced the jurors to conclude that defendant's alcohol consumption "caused him to act irrationally and violently in his encounter with Ms. DelValle." The defendant cites this Court's holding in *Handy v. Geary*, 105 R.I. 419, 252 A.2d 435 (1969) as support for this contention. In *Handy*, this Court instructed that whenever a party seeks to introduce evidence of alcohol consumption, the trial justice shall "conduct a preliminary hearing outside the presence of the jury to resolve whether evidence of alcohol consumption rises to such a level that it should be admitted at trial." *State v. Clark*, 974 A.2d 558, 583 (R.I.2009) (citing *Handy*, 105 R.I. at 431, 252 A.2d at 441–42). Only if the trial justice finds "that the evidence is such that different minds can naturally and fairly come to different conclusions on the question of intoxication"[6] may evidence of drinking be admitted with proper instruction given to the jury. *Handy*, 105 R.I. at 431, 252 A.2d at 442. We extended the application of this procedure to criminal cases in *State v. Amaral*, 109 R.I. 379, 386–88, 285 A.2d 783, 787–88 (1972). The defendant further argues that the cautionary instruction given by the trial justice "did not dispel the taint of the challenged evidence," thus requiring the justice to declare a mistrial. We disagree.

▬▬ In considering a motion to pass occasioned by the accidental introduction of allegedly harmful information at trial, "the trial justice must assess the prejudicial impact" of the information. *State v. Rosario*, 14 A.3d 206, 215 (R.I.2011) (quoting *State v. LaPlante*, 962 A.2d 63, 70 (R.I.2009)). A statement may be held to be sufficiently prejudicial when it is "extraneous to the issues before the jury and tend[s] to inflame the passions of the jury." *Id.* (quoting *State v. Monteiro*, 924 A.2d 784, 792 (R.I.2007)). Furthermore, rather than using some prescribed formula for determining prejudice, we have observed that potentially prejudicial evidence must be "viewed in the context in which it appeared and in light of the attendant circumstances." *Id.* (quoting *LaPlante*, 962 A.2d at 70–71).

Taking into consideration all the circumstances surrounding the statement by Ms. DelValle, we hold that the comment regarding defendant's drinking on the day of the incident was not sufficiently prejudicial as to prevent the jury from calmly and dispassionately considering the evidence. *See Rosario*, 14 A.3d at 216. Indeed, prior to Ms. DelValle's statement, the jury al-

---

5. The cautionary instruction was as follows: "THE COURT: Counsel for the defendant has asked that I strike the answer of the witness with respect to any testimony of drinking. I would ask you to disregard her answer in that respect, that his drinking at this time should not come into your consideration of the case. And I would ask the witness to keep your answers in response to the questions asked and not volunteer some additional information.
"THE WITNESS: Okay.
"THE COURT: Okay. And you heard my earlier instruction about what it means when I strike testimony. It means like you never heard it before, so you never heard that before. Okay, motion to strike is granted."

6. In *Handy v. Geary*, 105 R.I. 419, 252 A.2d 435 (1969), this Court defined "intoxication" as "a situation where, by reason of drinking intoxicants an individual does not have the normal use of his physical or mental faculties, thus rendering him incapable of acting in a manner in which an ordinarily prudent and cautious man, in full possession of his faculties, using reasonable care, would act under like conditions." *Id.* at 431, 252 A.2d at 441.

ready had been made aware during Ms. DelValle's earlier testimony that both she and defendant had used crack cocaine "all the time" together. This testimony concerning defendant's drug use was admitted without objection. In the context of this other, possibly more, prejudicial testimonial evidence, the trial justice did not abuse his discretion in denying to pass the case.

■ Moreover, the trial justice's cautionary instruction to the jury took place immediately after the sidebar conference. Unless some indication exists that the jury failed to obey the cautionary instruction given by the trial justice, we must assume that the jury followed the instruction as given. *State v. Barbosa*, 908 A.2d 1000, 1005 (R.I.2006); *see also State v. Mendoza*, 889 A.2d 153, 159 (R.I.2005). In this case, there is no indication that the jury failed to obey the cautionary instruction. Therefore, considering the full testimonial evidence and the trial justice's specific and timely cautionary instruction to the jury, we find no clear error committed by the trial justice in refusing to pass the case.

## B

## Evidence of Defendant's Past Convictions

■ Next, defendant argues that the trial justice abused his discretion in allowing the prosecutor to impeach him with seven of his prior convictions.[7] Outside the presence of the jury, the trial justice considered the admissibility of each prior conviction, and gave defendant full opportunity to contest any introduction. Ultimately, the trial justice allowed these seven convictions for impeachment purposes, in the event that defendant actually testified. Subsequently, defendant took the stand, and during cross-examination the prosecutor attempted to impeach him by using the prior convictions.[8] Upon completion of defendant's testimony, the trial justice gave a cautionary instruction to the jury as to the prior convictions.

■ Rule 609 of the Rhode Island Rules of Evidence permits the admission of a witness's prior conviction to attack that witness's credibility unless the court determines that the prejudicial effect of the conviction substantially outweighs its probative value.[9] *Gongoleski*, 14 A.3d at

---

7. The past convictions and associated dates are as follows: (1) simple domestic assault and (2) violation of a no-contact order (May 2, 2001); (3) simple assault and (4) disorderly conduct (May 26, 2004); (5) obtaining food or accommodations with the intent to defraud (July 6, 2004); (6) obstructing a police officer and (7) disorderly conduct (July 20, 2004). In addition to these seven prior convictions, defendant's criminal record included a conviction for domestic felony assault with a dangerous weapon in 1997. Conceding that this 1997 conviction was "probably overly prejudicial" because it was identical to the charge in the instant case, the prosecution did not request for its admittance.

8. Initially in his appellate brief, defendant contends that the trial justice abused his discretion by allowing the prosecution to impeach him with each of the seven convictions. Later in his brief, however, he argues that the trial justice abused his discretion in regard to only six of the seven convictions—presumably excepting the conviction for obtaining food or accommodations with the intent to defraud. Because of this inconsistency, and for sake of completeness, we will proceed to evaluate the merits of defendant's contentions as if he objects to the admission of all seven convictions.

9. Specifically, Rule 609 of the Rhode Island Rules of Evidence states in pertinent part:
   "(a) *General Rule.* For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record.
   "(b) *Discretion.* Evidence of a conviction under this rule is not admissible if the court determines that its prejudicial effect substantially outweighs the probative value of the conviction. If * * * the conviction is for a misdemeanor not involving dishonesty or false statement, the proponent of such evi-

222. "In contrast to Rule 609 of the Federal Rules of Evidence, our Rule 609 provides that the prior conviction need not involve dishonesty, false statement, or a felony to be admissible [for impeachment purposes]." *Gongoleski*, 14 A.3d at 222–23 (quoting *State v. Medina*, 747 A.2d 448, 450 (R.I.2000)). "The rationale behind Rule 609 'is that the jury should be able to consider whether or not a person who has previously broken the law may have such disrespect for the law as to render him or her unwilling to abide by the oath requiring truthfulness while testifying.'" *Gongoleski*, 14 A.3d at 223. (quoting *Remy*, 910 A.2d at 798).

██ It is also well established in this jurisdiction that "[a] trial justice is vested with a considerable degree of discretion in deciding whether or not to admit evidence of prior convictions to impeach a witness." *Gongoleski*, 14 A.3d at 222 (quoting *Remy*, 910 A.2d at 796). As such, this Court will overturn the trial justice's ruling only if there has been an abuse of discretion. *See State v. Rocha*, 834 A.2d 1263, 1266 (R.I. 2003). Additionally, this Court may uphold the trial justice even if this Court would have decided the matter differently had it been in the trial justice's position. *Gongoleski*, 14 A.3d at 222.

The defendant asserts that because two of the prior convictions involved "assaultive behavior" the jury likely was improperly influenced to believe that defendant assaulted Ms. DelValle, despite the trial justice's cautionary instructions. We find this argument to be unpersuasive. "This Court on numerous occasions has upheld the admission of a defendant's prior convictions for impeachment purposes when such convictions were similar or identical to the crime for which that defendant was tried." *Gongoleski*, 14 A.3d at 223; *see also State v. Rodriquez*, 731 A.2d 726, 731–32 (R.I.1999) (affirming trial justice's decision to allow the prosecution to use the defendant's prior convictions of assault with a dangerous weapon and assault with the intent to rob to impeach the credibility of the defendant, who was on trial for robbery); *State v. Taylor*, 581 A.2d 1037, 1039–40 (R.I.1990) (affirming trial justice's decision to allow the prosecution to use the defendant's prior conviction of breaking and entering in the daytime to impeach the credibility of the defendant, who was on trial for robbery); *State v. Maxie*, 554 A.2d 1028, 1031–32 (R.I.1989) (affirming trial justice's decision to allow the prosecution to use the defendant's prior convictions of attempted larceny and robbery to impeach the credibility of the defendant, who was on trial for robbery). Thus, the prior assaultive convictions at issue in this case are no more prejudicial to this defendant than the prior convictions were to the defendants in the cases cited above. *See Remy*, 910 A.2d at 799.

██ The defendant also asserts that his misdemeanor convictions for disorderly conduct, obstructing a police officer, and violating a no-contact order do not pertain to his credibility as a witness. Rather, defendant contends, the use of these prior convictions improperly suggested to the jury that he was "an ill-behaved individual with no respect for authority." This argument is unavailing and starkly contrasts the very purpose of Rule 609. As discussed, Rule 609 permits, under the trial justice's discretion, the admission of a witness's prior convictions to afford a jury another avenue to assess that witnesses's credibility. *See Gongoleski*, 14 A.3d at 222–23.

dence shall make an offer of proof * * * so that the adverse party shall have a fair opportunity to contest the use of such evidence."

In regard to the conviction for obtaining food or accommodations with the intent to defraud, defendant provides no basis as to how the trial justice erred in admitting this conviction. Moreover, this particular prior conviction involves an act of dishonesty or untruthfulness. The trial justice did not err in admitting this conviction for impeachment purposes.

In this case, the record shows that the trial justice engaged in the appropriate balancing test. Each of the prior convictions occurred within ten years of the trial and therefore was not overly remote. *See Vargas,* 991 A.2d at 1061–62 (recognizing the passage of time as being one factor for the trial justice to consider when determining whether to admit evidence of prior convictions). It was likely that defendant and Ms. DelValle would present conflicting testimony to the jury. Thus, the case may have, in large part, turned on the credibility of these two witnesses. Taking these factors into consideration, it was reasonable for the trial justice to conclude that defendant's prior convictions had significant probative value. Furthermore, to off-set the prejudicial effect of the prior convictions, the trial justice, immediately after defendant finished testifying, provided a cautionary instruction to the jury.[10]

This Court must accept "that a jury has followed a trial justice's instructions as they were given." *Rosario,* 14 A.3d at 216 (quoting *LaPlante,* 962 A.2d at 71–72). We hold, therefore, that the trial justice did not abuse his discretion in admitting, for impeachment purposes, evidence of the defendant's prior convictions.

## V

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The record may be remanded to the Superior Court.

---

10. Specifically, the trial justice cautioned:
   "I instruct you that to the extent you consider these prior convictions at all, you may only consider them for purposes of judging the credibility of the defendant's testimony, the credibility of the defendant. You may not consider those prior convictions for purposes of considering whether his past behavior was similar to his current behavior in 2007. You may not, in other words, consider those prior convictions for the purpose of determining whether he acted consistent with his prior conduct. You may only consider them for credibility, for judging his credibility."