March 2, 2023

**Supreme Court**

No. 2021-146-M.P.

(Dissent begins on Page 12)

Peter Montaquila                    :

                    v.                    :

Peter F. Neronha, in his official capacity  :
        as Attorney General of
        Rhode Island, et al.

NOTICE:  This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Peter Montaquila        :

v.           :

Peter F. Neronha, in his official capacity  :
    as Attorney General of
    Rhode Island, et al.

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Justice Long, for the Court.**  This case came before the Supreme Court after we granted a request from the petitioner, Peter Montaquila, for a writ of certiorari. Mr. Montaquila seeks review of a final decision by the respondent, the Rhode Island Office of the Attorney General, that denied his application to renew his concealed or open-carry license pursuant to G.L. 1956 § 11-47-18(a).[1] This Court issued the writ and ordered the parties to appear and show cause why the issues raised in this

---

[1] The initiating case documents name Peter F. Neronha and Edward Troiano, in their official capacities as the Attorney General of Rhode Island and the Chief of the Bureau of Criminal Identification and Investigation respectively, as respondents. The parties refer to the respondents jointly as "the Attorney General." We do the same.

appeal should not be summarily decided. After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument. For the reasons set forth in this opinion, we set aside the Attorney General's decision and quash the Attorney General's denial.

**Facts and Procedural History**

On October 28, 2020, Providence police officers arrested Mr. Montaquila for misdemeanor simple assault after an incident involving his firearm at his place of business. The Providence Police Department seized the firearm and three days later, based on this charge, the Attorney General revoked his license to carry concealed weapons. Eventually the government dismissed the charge against him.

On or after November 2, 2020, Mr. Montaquila applied to renew license No. 9012031, his concealed-carry license which was scheduled to expire on December 30, 2020. The application form questioned whether the applicant had "ever been arrested or charged for any offense[.]" Mr. Montaquila marked both the "yes" and "no" boxes and wrote "see letter attached."

In the undated letter attached to his application, Mr. Montaquila explained the incident as follows:

> "[A] gentleman came into my business, which is a gas station and auto detailing facility[,] and became immediately combative and aggressive toward my staff because they would not perform certain work for free. He

- 2 -

was clearly under the influence of drugs at the time. He began to throw items off the desk and act very threatening in my store.

"I came out of my office at my employees' request to mediate the situation. I told the gentleman he would have to leave the premises, and at that time he got very close to my face and shoved me away. At that point, I put my arms around his shoulders and walked him out the door. At no point did I strike, hit, or assault this person.

"The man then called the Providence Police, falsely reported that I assaulted him without reason, and I was arrested."

In closing his letter, he stated that the government had already dismissed the charge and that his record was set to be sealed on January 6, 2021.

Mr. Montaquila authorized the Attorney General to investigate his background and to disclose and review "all records and any other information concerning [Mr. Montaquila] whether such records and other information are public, private, privileged, or confidential." The police report describing the October 28, 2020 incident (incident report) included information that Mr. Montaquila did not disclose in the undated letter attached to his application. Specifically, the incident report stated that the man who called the police told them that after Mr. Montaquila pulled him out of the store, Mr. Montaquila pulled a black gun from his waistband and pointed it at the man's head. When the police arrived at the scene, they found Mr. Montaquila's loaded black gun tucked into his waistband. The incident report also noted that Mr. Montaquila stated that he

brandished his firearm because he feared the other man was attempting to retrieve a weapon from his car. Finally, the incident report stated that the allegation that Mr. Montaquila pointed the gun at the other man was "still under investigation."

On December 7, 2020, the case against Mr. Montaquila was dismissed pursuant to Rule 48(a) of the District Court Rules of Criminal Procedure. The Attorney General subsequently notified Mr. Montaquila that it required additional information, including motions or orders of expungement. Additionally, on December 26, 2020, the Attorney General asked then-Providence Police Chief Hugh Clements if he knew of any reason why Mr. Montaquila's application should be denied.

On January 6, 2021, the District Court granted Mr. Montaquila's motion to seal his record, and Mr. Montaquila sent the order to the Attorney General. Thereafter, on January 25, 2021, Chief Clements indicated that he knew of no reason why the Attorney General should deny the application.

By letter dated March 4, 2021, the Attorney General denied Mr. Montaquila's application. The letter stated:

> "It has been decided by this Office, in its broad discretion to issue a permit to carry a pistol or revolver, to deny your application **[d]ue to the last incident report CCR# 2020-89706 and arrest. In the police report you stated that you pulled you[r] firearm from your back area and brandished it. Your letter explaining the incident does not include the brandishing of your firearm**."

At Mr. Montaquila's request, the Attorney General held an appeal conference by telephone on April 14, 2021. During the conference, Mr. Montaquila's counsel acknowledged that the Attorney General's initial revocation of Mr. Montaquila's license after his arrest was valid, but argued that the denial of his subsequent application was not.[2] The Attorney General concluded that Mr. Montaquila did not "provide any additional information" and upheld its original decision.

Mr. Montaquila filed a timely petition for a writ of certiorari, presenting three questions for our consideration: (1) whether the Attorney General intentionally violated a court order by failing to destroy his sealed arrest record and relying on it when denying his application; (2) whether the Attorney General violated a court order "by offering to disseminate" the sealed record as part of a discovery package in the absence of court approval; and (3) whether the Attorney General improperly denied his application, such that this Court should reverse "the denial and order[ ] the [Attorney General] to renew" his license. We granted the petition for the writ as prayed and ordered the Attorney General to transmit the record of the underlying proceedings. The Attorney General thereafter moved to file the certified record under seal, and we granted the motion.

---

[2] The record does not indicate that there was a challenge to or hearing regarding the revocation of license No. 9012031.

## Issues Presented

Mr. Montaquila argues that the Attorney General erred in denying his application for a renewed concealed or open-carry license under the Firearms Act, G.L. 1956 chapter 47 of title 11, because, according to the January 6, 2021 order of the District Court, the Attorney General was obligated "to destroy all documents" pursuant to G.L. 1956 § 12-1-12.[3] The essence of his argument is that the Attorney General improperly relied on a document that should have been destroyed, and that the Attorney General otherwise lacked legally competent evidence to support the denial of his application.

We consider Mr. Montaquila's argument concerning the requirements of § 12-1-12 and whether the record contains legally competent evidence to support the denial of his application under the Firearms Act.

## Standard of Review

When a licensing authority denies a concealed-carry license application under the Firearms Act, the applicant may seek review in this Court by petition for a writ of certiorari. *Mosby v. Devine*, 851 A.2d 1031, 1051 (R.I. 2004). We limit our

---

[3] Mr. Montaquila's statement filed pursuant to Article I, Rule 12A of the Supreme Court Rules of Appellate Procedure summarizes the issue presented as involving G.L. 1956 § 15-15-1, but proceeds to discuss § 12-1-12. Moreover, Mr. Montaquila also provides no analysis regarding whether the Attorney General's offer to disseminate the sealed record during the administrative appeal violated the terms of the order of the District Court. We therefore deem the issue waived. *State v. Chase*, 9 A.3d 1248, 1256 (R.I. 2010).

review "to an examination of the record[.]" *In re McBurney Law Services, Inc.*, 798 A.2d 877, 881 (R.I. 2002) (quoting *Asadoorian v. Warwick School Committee*, 691 A.2d 573, 577 (R.I. 1997)). "If legally competent evidence exists to support that determination, we will affirm it unless one or more errors of law have so infected the validity of the proceedings as to warrant reversal." *Smithfield Voters for Responsible Development, Inc. v. LaGreca*, 755 A.2d 126, 128 (R.I. 2000) (quoting *Kent County Water Authority v. State (Department of Health)*, 723 A.2d 1132, 1134 (R.I. 1999)).

"Legally competent evidence is defined as 'such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance.'" *Beagan v. Rhode Island Department of Labor and Training*, 162 A.3d 619, 626 (R.I. 2017) (quoting *Rhode Island Temps, Inc. v. Department of Labor and Training, Board of Review*, 749 A.2d 1121, 1125 (R.I. 2000)).

**Legally Competent Evidence**

The Firearms Act requires an individual to obtain a license to carry a visible or concealed weapon, G.L. 1956 § 11-47-8(a), and identifies two licensing authorities: municipalities, which may issue licenses to carry concealed weapons pursuant to § 11-47-11; and the Attorney General, who may issue a license to carry a visible or concealed firearm pursuant to § 11-47-18.

In delegating this licensing authority, the General Assembly assigned to state and municipal officials the duty to investigate applicants and to make findings of fact about whether applicants satisfy the licensing criteria. *State v. Storms*, 112 R.I. 121, 126, 308 A.2d 463, 466 (1973). The Attorney General has discretion in its fact-finding endeavors, but it must meet "minimum procedural requirements" when denying an application. *Mosby*, 851 A.2d at 1051. Upon completion of an investigation, the Attorney General must disclose the evidence upon which it based its decision "and the rationale for the denial." *Id*. Moreover, while the Attorney General enjoys discretion in its fact-finding role, that discretion is not boundless. *See New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111, 2161-62 (2022) (Kavanaugh J., concurring) (cautioning states with constitutionally permissible licensing regimes against operating so as to "grant open-ended discretion to licensing officials").

In this case the Attorney General relied on Mr. Montaquila's sealed arrest record in denying his license application. The denial letter explained that the decision was "**[d]ue to the last incident report**[.]" The denial letter further specified that Mr. Montaquila told the police "**that [he] pulled [his] firearm * * * and brandished it.**" Mr. Montaquila asserts this reliance was error, because, he argues, § 12-1-12 required the destruction of "all documents."

Section 12-1-12 provides, in relevant part:

"Any fingerprint, photograph, physical measurements, or other record of identification, heretofore or hereafter taken by or under the direction of the attorney general, the superintendent of state police, the member or members of the police department of any city or town, or any other officer authorized by this chapter to take them, of a person under arrest, prior to the final conviction of the person for the offense then charged, shall be destroyed by all offices or departments having the custody or possession within sixty (60) days after there has been an acquittal, dismissal, no true bill, no information, or the person has been otherwise exonerated from the offense with which he or she is charged, and the clerk of court where the exoneration has taken place shall, consistent with § 12-1-12.1, place under seal all records of the person in the case including all records of the division of criminal identification established by § 12-1-4." Section 12-1-12(a)(1).

When this Court construes a statute, we "interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Waterman v. Caprio*, 983 A.2d 841, 844 (R.I. 2009) (quoting *Iselin v. Retirement Board of Employees' Retirement System of Rhode Island*, 943 A.2d 1045, 1049 (R.I. 2008)). The clear, unambiguous language of § 12-1-12 plainly does not mandate the destruction of all records as Mr. Montaquila suggests. Mr. Montaquila provides no analytical basis for such a broad reading, and we summarily reject his unsupported, conclusory assertion.

Nevertheless, we must assess whether the incident report and stated rationale suffice as adequate to support the denial.

- 9 -

The Attorney General argues that it did not rely on the sealed incident report, and states that in any case, the record reflects that Mr. Montaquila acknowledged the circumstances surrounding his arrest, as well as the propriety of the revocation of his prior license immediately following his arrest. The Attorney General further argues that it had broad discretion to consider these facts and how they bear upon whether Mr. Montaquila demonstrated that he had not, and would not, use his firearm for any unlawful or improper purpose; or whether Mr. Montaquila engaged in unlawful, dangerous, or violent conduct that justified denying his application.

We are unpersuaded by the arguments of the Attorney General regarding the denial letter and the inferences drawn from the evidence in the record. First, the denial letter, dated more than sixty days after the dismissal of the assault charge, clearly relies on the incident report. Specifically, it notes that the incident report included facts that Mr. Montaquila did not divulge in his license application and bases the denial on Mr. Montaquila's failure to state that he brandished the firearm. However, the omission of the word "brandished" in describing the incident is not legally competent evidence to support the denial.

Additionally, our examination of the record reveals no evidence to support the denial of Mr. Montaquila's license application. Nothing contained in the record demonstrates any investigation of Mr. Montaquila's fitness to carry beyond contacting Chief Clements on December 26, 2020. Having received the District

- 10 -

Court order that reflects dismissal of the assault charge pursuant to Rule 48(a), as well as the January 25, 2021 notification from Chief Clements that he was not aware of any basis for denying the application, nothing before the Attorney General suggested that Mr. Montaquila acted in anything other than self-defense during the incident. Without any other evidence or rationale justifying the denial, Mr. Montaquila's omission is, at best, mere scintilla. We therefore conclude that there is no legally competent evidence to support the Attorney General's decision.

**Appropriate Remedy**

The Attorney General argues that if this Court reverses its decision, we would "run[ ] afoul of this Court's precedent[.]" Citing our decision in *Gadomski v. Tavares*, 113 A.3d 387 (R.I. 2015), the Attorney General notes that we previously "remanded a matter to the permitting authority rather than ordering the permit to be issued." In *Gadomski*, the East Providence Police Chief denied the petitioner's application for a concealed-carry license pursuant to § 11-47-11. *Gadomski*, 113 A.3d at 387. It is distinguishable from the case at bar. *See id.* at 389-90 (distinguishing the licensing procedures in §§ 11-47-11 and 11-47-18). In *Gadomski*, we remanded for further fact finding for two reasons: First, the licensing authority applied the "incorrect standard" when reviewing the petitioner's application, and second, the denial letter in *Gadomski* provided only "bare, rote conclusions" as the basis for the denial. *Id.* at 391, 392 (noting the licensing authority

- 11 -

must make the "necessary [factual] findings to support the determination") (quoting *Bernuth v. Zoning Board of Review of Town of New Shoreham*, 770 A.2d 396, 401 (R.I. 2001)). In contrast, there is no indication that further fact-finding is needed in this case. *See Bernuth*, 770 A.2d at 401 (remarking that a factfinder "is required to make findings of fact and conclusions of law in support of its decisions in order that such decisions may be susceptible of judicial review") (quoting *Cranston Print Works Co. v. City of Cranston*, 684 A.2d 689, 691 (R.I. 1996)). The Attorney General provided a rationale for denying Mr. Montaquila's application: His description of the arrest did not match the police report in certain respects. The Attorney General exercised its discretion on the basis of that description; and we have examined the record accordingly. Remand is therefore unnecessary.

## Conclusion

For the foregoing reasons, we conclude that the Attorney General's decision was not based on legally competent evidence. We set aside the Attorney General's decision and quash its denial of Mr. Montaquila's application. This case is remanded to the Attorney General with direction to renew the petitioner's concealed-carry permit.

**Justice Robinson, dissenting.** While I acknowledge the compelling attractiveness of the straightforward prose with which the majority has organized

and explained its analysis of the issues in this deceptively simple case, at the end of the day I find myself unable to agree with that analysis. The truth is that I simply view the facts before us and the applicable law in a perspective that differs radically from that of the majority. Accordingly, I respectfully dissent. In my judgment, the Attorney General's decision to deny Mr. Montaquila's application was the product of the reasoned exercise of his broad discretion, and I am convinced that his decision to deny the application should be upheld.

In the preceding paragraph, I characterized this case as being "deceptively simple." I used those words because, at first glance, it is understandable why it might appear to some that the granting of Mr. Montaquila's "motion to seal" on January 6, 2021 in effect barred the Attorney General from giving any weight to what the sealed documents revealed about what had actually transpired on October 28, 2020 at Finest Car Wash & Auto Repair (Mr. Montaquila's place of business). In my view, however, that "first-glance" impression as to how this case should be resolved is fundamentally erroneous as being the product of a misunderstanding of what the Attorney General was entitled to rely upon in considering Mr. Montaquila's application for a concealed-weapons permit.

As is so often the case when one is confronted with an apparently complex situation, close attention to the chronology of events can be enlightening—and I submit that the chronology of what happened in this case should lead to the

conclusion that, keeping in mind the broad discretion with which the Attorney General is vested in such matters,[1] it is my definite opinion that his decision to deny Mr. Montaquila's application should be affirmed.

## The Relevant Chronology

It is uncontested that Mr. Montaquila was involved in an altercation with another person at the above-referenced place of business on October 28, 2020.  It is further uncontested that that altercation resulted in Mr. Montaquila being arrested and charged by the Providence Police with "simple assault or battery."[2]

Thereafter, on November 2, 2020, Mr. Montaquila applied for a new "License to Carry a Concealable Weapon" (hereinafter "the LTC").

In connection with his LTC application, Mr. Montaquila submitted an eight-paragraph letter concerning the events that culminated in his arrest on October 28, 2020.  That letter set forth Mr. Montaquila's version of the events which took place on that date, but it made absolutely no mention of his having brandished a firearm in the course of those events.  (The latter fact is noted in the incident report prepared by the Providence Police, which I discuss *infra*.)

---

[1]     *See Mosby v. Devine*, 851 A.2d 1031, 1051 (R.I. 2004).

[2]     The incident which is at the center of this case took place on October 28, 2020. Mr. Montaquila has not challenged the revocation of his then-active license that occurred immediately thereafter.  In fact, his attorney has expressly conceded that that revocation was valid.  It is Mr. Montaquila's later application for a new license and the eventual denial of that application that is the only focus of the majority's opinion and of this dissent.

Also in connection with his LTC application, Mr. Montaquila signed and had notarized a document entitled "Authorization for Release of Information." Said Authorization stated in pertinent part as follows:

> "I, Peter P. Montaquila, Jr., hereby give the Office of Attorney General the authority to conduct a comprehensive investigation of my background including, but not limited to, oral discussions with any person concerning my background. I also authorize a review and full disclosure of all records and any other information concerning myself whether such records and other information are public, private, privileged or confidential."

A police report concerning the October 28, 2020 incident was among the records provided to the Attorney General. (The majority opinion refers to that document as the "incident report," and I shall do likewise.) As the majority opinion correctly notes, the incident report "included information that Mr. Montaquila did not disclose in the undated letter attached to his application." The majority opinion then goes on to accurately summarize what the incident report stated relative to the information that Mr. Montaquila had chosen not to disclose—notably the fact that Mr. Montaquila had stated to the police that "he brandished his firearm because he feared the other man was attempting to retrieve a weapon from his car."

On December 7, 2020, the charge against Mr. Montaquila was dismissed by the Sixth Division District Court pursuant to Rule 48(a) of the District Court Rules of Criminal Procedure.

On January 6, 2021, the District Court granted Mr. Montaquila's motion to seal the records pertaining to the above-referenced criminal charge.

On March 4, 2021, the Attorney General denied Mr. Montaquila's LTC application.

Mr. Montaquila, assisted by counsel, appealed from the Attorney General's decision; and on April 14, 2021, a telephonic appeal conference was held.

A letter dated April 21, 2021 to Mr. Montaquila from Edward Troiano (the Chief of the Attorney General's Bureau of Criminal Identification and Investigation) notified him that his appeal had been denied. That letter contains the following important sentences:

> "Mr. Saccoccio [Mr. Montaquila's attorney] * * * acknowledged that you submitted a letter with your application specifically referencing the incident [of October 28, 2020] and explaining your role, but leaving out the fact that you removed a firearm from your waistband and brandished it during the incident. *The arrest report related to the October 28, 2020 incident was also available to and reviewed by this office at the time of your application, prior to it being sealed by order of the Court.*" (Emphasis added.)[3]

---

[3] The sentence in Mr. Troiano's letter that I have italicized is highly significant because it states that the incident report was reviewed by an official in the Attorney General's office "prior to it being sealed by order of the Court."

Although *the document* which summarized the facts about what transpired on October 28, 2020 was eventually the subject of the sealing order, *the facts themselves* which the document made known to the Attorney General's office were not thereby erased from human cognition and memory. Indeed, how could they be?

**Discussion**

This Court's limited role in this case is to determine whether there was legally competent evidence to support the Attorney General's decision. *See Preservation Society of Newport County v. City Council of the City of Newport*, 155 A.3d 688, 692 (R.I. 2017) ("Our task is to scour the record to discern whether any legally competent evidence supports the lower tribunal's decision and whether the decision-maker committed any reversible errors of law in the matter under review.") (internal quotation marks omitted); *see also Smithfield Voters for Responsible Development, Inc. v. LaGreca*, 755 A.2d 126, 128 (R.I. 2000). As the majority correctly notes, legally competent evidence has been authoritatively defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance." *Rhode Island Temps, Inc. v. Department of Labor and Training, Board of Review*, 749 A.2d 1121, 1125 (R.I. 2000) (internal quotation marks omitted); *see also Beagan v. Rhode Island Department of Labor and Training*, 162 A.3d 619, 626 (R.I. 2017).

The Attorney General has broad discretion with respect to LTC applications. *See Mosby v. Devine*, 851 A.2d 1031, 1051 (R.I. 2004).[4] And, once the Court has

---

[4] Although the Attorney General is vested with broad discretion in this domain, it is certainly not boundless. *See Mosby v. Devine*, 851 A.2d 1031, 1050 (R.I. 2004) (expressly stating that "decisions of the Attorney General in licensing matters are not immune from judicial review").

- 17 -

determined that the Attorney General did not abuse his discretion in a particular case, whether the members of this Court might not have exercised their discretion to the same effect is legally irrelevant. *See, e.g.*, *State v. Gillespie*, 960 A.2d 969, 980 (R.I. 2008) ("[W]e may uphold a trial justice's ruling even if we would have ruled differently had we been in the trial justice's position.").[5]

The fact that Mr. Montaquila's letter omitted an important and material fact relative to what occurred on October 28, 2020 is troubling in its own right.  But the fact that the incident report indicated that Mr. Montaquila had "brandished" his firearm during the incident constituted, in my judgment, more than enough of a reasonable basis upon which the Attorney General could make his discretionary decision not to approve Mr. Montaquila's application.  That decision was based on legally competent evidence, and the quantum of that evidence was far more than a scintilla. *See Rhode Island Temps, Inc.*, 749 A.2d at 1125.

The granting of the motion to seal resulted in *the documents* referenced in said motion being sealed.  However, *the facts* recounted in those documents (of which

---

[5]    *See Harodite Industries, Inc. v. Warren Electric Corporation*, 24 A.3d 514, 533 (R.I. 2011); *State v. Gongoleski*, 14 A.3d 218, 222 (R.I. 2011); *North Providence School Committee v. North Providence Federation of Teachers, Local 920, American Federation of Teachers*, 945 A.2d 339, 345 n.10 (R.I. 2008); *see also National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642 (1976) (per curiam) ("The question, of course, is not whether this Court, or whether the Court of Appeals, would as an original matter have dismissed the action; it is whether the District Court abused its discretion in so doing.")

the Attorney General was aware prior to the granting of the motion to seal) were not somehow nullified—nor could they be. The sealing statute brings about the sealing of records; it does not mandate the erasure from consciousness of factual knowledge concerning events that took place and were known prior to the issuance of the sealing order.[6]

An important decision of the United States Court of Appeals for the Second Circuit involved an analogous situation and merits careful attention. *Martin v. Hearst Corporation*, 777 F.3d 546 (2d Cir. 2015). In that case, the federal appellate court unanimously affirmed the grant of summary judgment in favor of the defendants (various media outlets). *See id.* at 553. The plaintiff, one Lorraine Martin, had sued those defendants alleging, *inter alia*, libel and invasion of privacy against the defendants because they had refused to remove from their respective websites the fact that she had been arrested for various drug offenses in August of 2010 but had never been prosecuted and had had her arrest records erased in January of 2011 pursuant to Connecticut's "Erasure Statute." *Id.* at 549. Ms. Martin contended that "even though she [had been] arrested, once erasure occurred in January 2011, it became false and defamatory to publish statements regarding that

---

[6]   Since it is my view that the Attorney General's decision should be upheld, I need not and therefore shall not express an opinion as to the majority's decision about the appropriate remedy—i.e., its decision not to remand this case to the Attorney General for further fact-finding.

arrest." *Id.* The Second Circuit rejected that contention, and it wrote as follows: "Here, the uncontroverted fact is that Martin was arrested on August 20, 2010, and that the reports of her arrest were true at the time they were published. Neither the Erasure Statute nor any amount of wishing can undo that historical truth. The Moving Finger has written, and moved on." *Id.* at 551-52;[7] *see also G.D. v. Kenny*, 15 A.3d 300, 315-16 (N.J. 2011) ("[T]he expungement statute does not transmute a once-true fact into a falsehood. * * * It is not intended to create an Orwellian scheme whereby previously public information * * * now becomes beyond the reach of public discourse * * *.").

For these reasons, I heartily disagree with the majority's conclusion that "there is no legally competent evidence to support the Attorney General's decision." Therefore, I respectfully dissent.

---

[7] The "Moving Finger" metaphor alluded to by the Second Circuit in the *Martin* case is derived from the famous "Rubáiyát of Omar Khayyam," a Persian poem that was translated into English by the poet Edward Fitzgerald in 1859. The Moving Finger refers to the fact that time moves relentlessly forward and that, once an event has taken place, nothing will be able to "lure it back to cancel half a [l]ine." *See Martin v. Hearst Corporation*, 777 F.3d 546, 552 n.7 (2d Cir. 2015) (quoting the relevant lines from the English translation of the poem).



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI 02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Peter Montaquila v. Peter F. Neronha, in his official capacity as Attorney General of Rhode Island, et al. |
| **Case Number** | No. 2021-146-M.P. |
| **Date Opinion Filed** | March 2, 2023 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Melissa A. Long |
| **Source of Appeal** | Attorney General Administrative Appeal |
| **Judicial Officer from Lower Court** | N/A |
| **Attorney(s) on Appeal** | For Petitioner: Frank R. Saccoccio, Esq. |
| | For Respondent: Andrea M. Shea Department of Attorney General |