**Supreme Court**

No. 2012-219-C.A.

(P2/11-10A)

|  |  |
|---|---|
| State | : |
| v. | : |
| Thomas Mercurio. | : |

NOTICE:  This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                              :

v.                              :

Thomas Mercurio.              :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Indeglia, for the Court.**   The defendant Thomas Mercurio (Mercurio or defendant) appeals from his conviction on one count of resisting arrest.  The defendant contends that the trial justice abused his discretion by permitting the prosecutor to inquire about three prior convictions for assault and, during cross-examination, erred in permitting the prosecutor to reveal that two of the defendant's prior assault convictions in question were upon police officers. This case came before the Supreme Court for oral argument on March 4, 2014.  After carefully considering the written and oral submissions of the parties, we are satisfied that this appeal may be resolved without further briefing or argument.  For the reasons set forth in this opinion, we vacate the judgment of conviction.

## I

### Facts and Travel

The defendant was charged by information on January 11, 2011 with making threats to a public official (count 1), simple assault and battery (count 2), resisting arrest (count 3), and disorderly conduct (count 4).

The incident triggering the charges occurred on the evening of October 26, 2010 in Cranston, Rhode Island. It began with a dispute between defendant and his neighbor, Ms. Irene Ferreira. According to defendant, he and his neighbor had been "feuding" for over a decade. Each had called the police on the other party in the past. On the evening in question, defendant testified that the dispute was nothing more than an exchange of childish words and that he was not angry. Ferreira, however, asserted that defendant was yelling in an outrageous tone that left her fearful for her life, prompting her to call 911 at around 6 p.m., requesting that a police officer be sent to her home.

The interactions between the police officer who responded to Ferreira's 911 call and defendant resulted in defendant being charged with the aforementioned criminal charges. A jury trial was conducted in the Providence County Superior Court over the course of four days between March 14, 2012 and March 20, 2012.

**A**

**The Trial**

**1**

**Officer Salvatore's Testimony**

At trial, Officer Donald K. Salvatore, Jr. testified that, just before 6 p.m., he was dispatched to the home of defendant because "there was a Tom Mercurio at that residence [who was] out of control." Officer Salvatore, in uniform, arrived at defendant's house in a marked police car. The testimony of defendant and that of Officer Salvatore diverge from the time of their initial encounter. Officer Salvatore stated that, as the front door of defendant's residence was open and the storm door was shut, and seeing a male and a female in the kitchen area, he knocked on the storm door. When they did not acknowledge him, he opened the storm door,

stepped on the threshold, and yelled, "Hello." The man asked who the officer was; after identifying himself as a Cranston police officer, Officer Salvatore asked the man if he was Tom. At this time, another man later identified as Thomas Mercurio "came running from the right side of the home" and began yelling, asking the officer if he had a warrant. Officer Salvatore described Mercurio as "irate" or "pretty upset." The officer testified that, at that time, he was standing on the threshold and had one foot inside of the home. Officer Salvatore explained that he asked defendant to come outside to talk, and they both stepped outside to the front stairway, with the officer standing approximately two feet away from defendant. After stepping outside, defendant said, "That f---ing neighbor." When he then asked defendant if he had any guns or knives on him, defendant angrily said, "F--- this," pushed him in the chest, and retreated back into the home.

Officer Salvatore testified that he then pursued defendant into the house, entering the landing between the first and second floors. He tried to grab defendant and repeatedly told defendant that he was under arrest. He testified that, because defendant was "flailing his arms" and "trying to kick," defendant's momentum caused him to trip down the stairs and fall sideways to the lower level. He then ran down the stairs and grabbed defendant, who was still kicking and punching in an apparent attempt to get away. According to Officer Salvatore, defendant was still swinging and kicking towards him before Officer Salvatore had his whole body on top of the face-down defendant, continually telling defendant that he was under arrest. He testified that defendant put his hands underneath his body after defendant was on his stomach and Officer Salvatore was on top of him. At this time, while trying to grab defendant's left arm, Officer Salvatore first became aware that two other Cranston patrolmen, Officers Aldrich and Escobar, had arrived. Officers Salvatore and Aldrich grabbed defendant's arms and handcuffed him.

- 3 -

Officer Salvatore testified that, as he escorted defendant to the police car, defendant was "yelling the whole time[,]" as were members of his family. He stated that defendant was "very tense when [Officer Salvatore] was getting him into the car, [and defendant] continued to call me a yellow bastard." According to him, defendant screamed and threatened to kill him while he walked defendant to the police car.

**2**

**Officer Aldrich's Testimony**

Officer Seth Aldrich testified that he also received the dispatch shortly before 6 p.m. and arrived at defendant's residence soon after Officer Salvatore. He testified that he was in the street, about twenty-five to thirty feet away, when he observed Officer Salvatore speaking with Mercurio. He did not hear much of what was said but did hear Officer Salvatore state that he would rather speak with Mercurio outside. He stated that Officer Salvatore was standing on the outside front steps of the house while Mercurio was standing in the open doorway. Officer Aldrich did not see defendant strike Officer Salvatore; he did see defendant quickly turn towards Officer Salvatore and re-enter the house and Officer Salvatore run into the house after him. Officer Aldrich then ran into the house, and "observed Officer Salvatore and * * * defendant wrestling on the [lower-level] floor." He stated that defendant was "lying on his stomach with his hands underneath his chest [and that he] attempted to get [defendant's] right arm from underneath him [as] Officer Salvatore was on [defendant's] left side." Officer Aldrich stated that he handcuffed defendant after a "brief struggle." During this time, defendant yelled toward his family members to get the video camera while saying that the officers should not have been in his home. Officer Aldrich followed behind Officer Salvatore and observed him secure defendant in the police cruiser. Officer Aldrich did not observe defendant kick, scream vulgarities, threaten

to kill Officer Salvatore, or otherwise cause problems either in the house or as he was being secured in the cruiser. Notably, Officer Aldrich was not questioned as to whether he heard Officer Salvatore inform defendant that defendant was under arrest.

**3**

**The Defendant's Testimony**

The defendant gave a different version of the events. He stated that, at the time Officer Salvatore arrived, he was eating dinner at the kitchen table with his mother, brother, and sister. According to defendant, his family's dinner was interrupted when they heard someone open the door and ask for "Todd." He became upset on seeing a police officer completely inside the house, with his foot on a stair and hand on the railing. He testified that he first asked Officer Salvatore "what he was doing in our home[,]" to which Officer Salvatore did not respond. When defendant next asked if the officer had a warrant, Officer Salvatore only responded by saying, "Just come down, I want to talk to you." The defendant then came down the stairway while pointing his finger at Officer Salvatore and telling him to leave. He stated that he was angry, but did not yell. The defendant then testified that he stopped on one of the first three steps when the officer, standing inside of the home approximately two feet away, grabbed defendant's right arm and collar, pulling him down the stairs and into the railing. The railing gave way and he fell to the bottom floor on his hands and knees. The defendant then testified that he received a blow to the left side of his rib and that the pain of the blow caused him to lie down flat on the ground. He stated that he received a blow on the left side of his head, and Officer Salvatore then put his knee in defendant's back. According to defendant, he had both arms under his stomach as a result of the blow but allowed the officer to handcuff him when the officer grabbed his arm. He stated that he and Officer Salvatore did not speak to each other at this point, and that he was not

told that he was under arrest. He first observed two more police officers after he was handcuffed and brought to his feet. The defendant testified that he went willingly to the officer's car and did not try to hit, yell at, threaten, or escape from Officer Salvatore.

After hearing all the testimony, the jury found defendant guilty of the charge of resisting arrest but not guilty of the charges of making threats to a public official, simple assault, and disorderly conduct. On April 4, 2012, the trial justice denied defendant's motion for a new trial and sentenced him to one year of imprisonment at the Adult Correctional Institutions, with thirty days to serve and eleven months suspended with probation.[1] Thereafter, defendant filed a notice of appeal to this Court on April 13, 2012. A final judgment of conviction and commitment entered on May 4, 2012.[2]

On appeal, defendant challenges the trial justice's pretrial ruling on his motion in limine permitting admission into evidence of his prior convictions. The defendant also challenges the trial justice's decision during trial that defendant had "opened the door" so as to allow the state to impeach his credibility on cross-examination by bringing in the fact that his prior convictions involved assaults against police officers.

Additional facts will be added as necessary to resolve the issues on appeal.

---

[1] The execution of defendant's sentence was stayed pending this appeal.
[2] This Court considers a premature notice of appeal timely so long as a final judgment is entered thereafter. See State v. Mitchell, 80 A.3d 19, 27 n.6 (R.I. 2013).

**Standard of Review**

"[T]he trial justice has broad discretion in deciding whether or not to admit evidence of prior convictions under Rule 609 [of the Rhode Island Rules of Evidence]." State v. McWilliams, 47 A.3d 251, 257 (R.I. 2012) (quoting State v. Vargas, 991 A.2d 1056, 1060 (R.I. 2010)). "Therefore, 'this Court will not overturn such a decision on appeal unless there has been an abuse of that discretion.'" State v. McRae, 31 A.3d 785, 789 (R.I. 2011) (quoting State v. Gongoleski, 14 A.3d 218, 222 (R.I. 2011)).

"With respect to evidentiary rulings, it is well established that 'questions as to the admissibility vel non of evidence are confided to the sound discretion of the trial justice.'" State v. Rosario, 14 A.3d 206, 215 (R.I. 2011) (quoting State v. Moreno, 996 A.2d 673, 678 (R.I. 2010)). Accordingly, this Court "will not interfere with a trial justice's decision in that regard unless there was a clear abuse of discretion * * *." Id. (quoting State v. Merida, 960 A.2d 228, 234 (R.I. 2008)). In addition, "[a] trial justice's determination as to the permissible scope of cross-examination is * * * given deference and will be disturbed on appeal only upon a clear showing of abuse of discretion and only if it constitutes prejudicial error." State v. Motyka, 893 A.2d 267, 280 (R.I. 2006).

**III**

**Analysis**

**A**

**The Motion in Limine**

The defendant first contends that the trial justice abused his discretion in denying his motion in limine to preclude admission into evidence of three prior convictions: a 1987 assault

on a police officer, a 1982 assault on a police officer, and a 1982 simple assault, for the purpose of impeachment under Rule 609 of the Rhode Island Rules of Evidence.[3]

Rule 609 provides that evidence of a prior criminal conviction is not admissible for impeachment purposes if the trial justice determines that its prejudicial effect substantially outweighs its probative value. It is also well-settled that, in Rhode Island, "the prior conviction need not involve dishonesty, false statement, or a felony to be admissible [for impeachment purposes]." McRae, 31 A.3d at 792 (quoting Gongoleski, 14 A.3d at 223). This Court has outlined factors that the trial justice must balance when deciding whether to permit the state to impeach a defendant with his or her prior convictions. See State v. Mattatall, 603 A.2d 1098, 1117 (R.I. 1992). "The trial justice must balance the remoteness of the conviction, the nature of the crime, and the defendant's disdain for the law as represented by the extent of his prior criminal record, to determine whether the relevance with respect to credibility outweighs the prejudicial effect to the defendant." Id. In making this determination, the trial justice has broad

---

[3] Rule 609 of the Rhode Island Rules of Evidence provides, in pertinent part:

> "(a) General Rule. For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record. 'Convicted of a crime' includes (1) pleas of guilty, (2) pleas of nolo contendere followed by a sentence (i.e. fine or imprisonment), whether or not suspended and (3) adjudications of guilt.

> "(b) Discretion. Evidence of a conviction under this rule is not admissible if the court determines that its prejudicial effect substantially outweighs the probative value of the conviction. If more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, or if the conviction is for a misdemeanor not involving dishonesty or false statement, the proponent of such evidence shall make an offer of proof out of the hearing of the jury so that the adverse party shall have a fair opportunity to contest the use of such evidence." (Emphasis added.)

discretion.  See Vargas, 991 A.2d at 1061.  Accordingly, "[t]his Court will not disturb a trial justice's finding regarding the admissibility of prior conviction evidence for impeachment purposes unless our review of the record reveals an abuse of discretion on the part of the trial justice."  State v. Silvia, 898 A.2d 707, 718 (R.I. 2006) (quoting State v. Morel, 676 A.2d 1347, 1357 (R.I. 1996)).

Here, the trial justice took note of the fact that "[t]he * * * conviction in 1987 * * * is not charged as something involving dishonesty or false statements, but it does concern conduct which is similar to the conduct which the defendant is now faced with."  The trial justice determined, however, that he would permit the state to use defendant's prior convictions to impeach defendant but stated that he would "inform the jury of the limited purpose for which that evidence was being offered * * *."

We perceive no abuse of discretion in the trial justice's decision to deny defendant's motion in limine.  The record in this case reflects that defendant was given an abundantly "fair opportunity to contest the [state's] use of [the] evidence [of his prior convictions]," as required by Rule 609(b).  Absent some indication of a clear error on the trial justice's part, we will not disturb the trial justice's decision on review.  "[T]he decision whether to admit evidence of prior convictions involves the balancing of several factors that turns on the particular facts of each case."  State v. Gillespie, 960 A.2d 969, 981 (R.I. 2008).  The trial justice was within his discretion to conclude at the pretrial stage that defendant's multiple prior convictions, in spite of their age, had a probative value in demonstrating a disdain for the law so as to affect a jury's assessment of defendant's credibility.  In particular, we note that this case, with the general lack of any physical evidence, largely hinged on a credibility determination, making the ability to impeach a witness's credibility of even greater importance.  We cannot find that the trial justice

was clearly wrong in his decision and, accordingly, will not disturb his denial of defendant's motion in limine.

**B**

**The Use of Defendant's Prior Convictions on Cross-Examination**

The defendant next argues that the trial justice erred in finding that defendant had "opened the door" to the prosecutor's specific mention that two of defendant's prior convictions were of assaults on police officers. He contends that the prosecutor's questioning exceeded the scope of defendant's testimony on direct and cross-examination. The defendant asserts that the prosecutor "manufactured" the issue of defendant's respect for police officers in order to be able to bring in these prior convictions.

It is axiomatic that cross-examination is generally limited to the scope of the direct examination. State v. Carvalho, 892 A.2d 140, 144 (R.I. 2006). However, "questions calculated to explain, contradict[,] or discredit a witness's testimony or designed to test the witness's accuracy, memory, veracity, credibility or bias are" also permitted. State v. Gordon, 880 A.2d 825, 838 (R.I. 2005). In addition, it is well-settled that "a witness's credibility may be challenged by evidence that the witness has been convicted of a crime * * *." State v. Price, 68 A.3d 440, 446 (R.I. 2013). The admission into evidence of previous crimes is, however, limited to certain enumerated purposes. See Rule 404(b) of the Rhode Island Rules of Evidence.[4] This Court has previously stated that

> "evidence that may not be admissible in the prosecution's case in
> chief may be used in rebuttal in order to counter false statements

---

[4] Rule 404(b) of the Rhode Island Rules of Evidence states, in pertinent part, that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake[,] or accident * * *."

made by the accused in the course of his direct testimony. * * * In sum[,] the <u>prosecution</u> <u>may</u> <u>not</u> <u>manufacture</u> <u>an</u> <u>issue</u> <u>in</u> <u>the</u> <u>course</u> <u>of</u> <u>cross-examination</u> <u>for</u> <u>the</u> <u>purpose</u> <u>of</u> <u>impeaching</u> <u>the</u> <u>credibility</u> <u>of</u> <u>defendant</u> by the use of evidence or testimony that would otherwise be inadmissible." <u>State v. O'Dell</u>, 576 A.2d 425, 429 (R.I. 1990) (emphasis added).[5]

Prior to defendant's direct examination, the trial justice granted his request to limit the state to inquiring about convictions for "assault," rather than "assault[s] on uniformed police officers[.]" In so doing, the trial justice modified his earlier ruling on defendant's motion <u>in limine</u> prohibiting the prosecution from inquiring on cross-examination whether two of defendant's prior convictions for assault involved police officers.

Because our discussion of defendant's arguments necessarily centers on the exchanges which took place at trial, we set forth the relevant portions here. During the cross-examination of defendant, the state first broached the topic of defendant's like or dislike of the police by inquiring why defendant asked Officer Salvatore "Do you have a warrant?" and why he was "angry" that Officer Salvatore was in his home. The defendant explained that "it's [his] personal understanding and knowledge that the police require a warrant or some type of consent upon entering a dwelling place." The following exchange then ensued:

"[The State]: You don't like the police, do you?

"[Defendant]: That's not true. I have many friends that are in the police department. I went to school with the chief of Providence, Hugh Clements, and he's a very good friend of mine.

"[The State]: You don't respect the police, do you?"

---

[5] <u>State v. O'Dell</u>, 576 A.2d 425, 429 (R.I. 1990), involved evidence that was inadmissible in the prosecution's case in chief because it had not been disclosed to the defendant as required under Rule 16 of the Superior Court Rules of Criminal Procedure. This Court has since applied this rule concerning the prosecution manufacturing an issue during cross-examination in the context of Rule 404(b) in <u>State v. McDowell</u>, 620 A.2d 94, 95-96 (R.I. 1993).

The trial justice overruled an objection made by defense counsel. The defendant was thus permitted to answer.

> "[Defendant]: I respect law and order, yes, I do.
>
> "[The State]: You respect law and order?
>
> "[Defendant]: Yes, I do."

The cross-examination of defendant then continued, before the following colloquy took place, again regarding defendant's sentiments about the police:

> "[The State]: You never got angry with the officer * * * and pushed him?
>
> "[Defendant]: I never said that.
>
> "[The State]: Because you respect police; right?
>
> "[Defendant]: I respect law and order, yes, I do.
>
> "[The State]: And you wouldn't put your hands on a police officer.
>
> "[Defendant]: No, I would not."

At a sidebar immediately following this exchange, the state argued that defendant had "opened the door" to the fact that two of his prior convictions for assault involved police officers. The trial justice determined that defendant had "opened the door" to the nature and circumstances surrounding the prior convictions. Therefore, he permitted the state to confront defendant with specific evidence of the prior convictions.

This Court has recently been faced with a similar situation involving a prosecutor's alleged manufacturing of an issue in order to impeach a witness's testimony in Rosario. In Rosario, 14 A.3d at 207-08, the defendant was charged with assault with a dangerous weapon on a police officer. In ruling upon two motions in limine, the trial justice in Rosario held inter alia

that evidence of one particular previous interaction between the defendant and the police officer who had been the victim of the alleged assault as well as of specific comments that the defendant had made with regard to the police officer would be admissible. Id. at 208-09. The trial justice further held that evidence of "generalized references to threats of assault on police officers in general" would be precluded but noted that her decision on the motions in limine might be changed depending on what the defendant testified to during trial. Id. at 209.

At trial, during cross-examination of the defendant, Rosario was asked specifically if he liked the victim-police officer. Rosario, 14 A.3d at 212. The defendant responded, "Yes, I like him. He is an officer. I respect authority." Id. The prosecutor then asked the defendant for confirmation: "Sir, you testified to this jury under oath that you respect all authority and you respect all Providence police officers; didn't you say that?" Id. The defendant answered in the affirmative. Id. At this point, the prosecutor questioned the defendant regarding a previous generalized negative statement defendant had made about "all Providence police officers[.]" Id. The trial justice permitted the cross-examination of the defendant to proceed with that line of questioning, finding that the defendant had "opened the door" with his answer that he respected authority. Id. at 212. This Court affirmed the trial justice's ruling, noting that "[the] defendant chose to answer a question about his attitude towards one person * * * with an extremely broad and unqualified declaration about his respect for authority in general[,]" in holding that defendant had "opened the door" to the rebuttal testimony which followed. Id. at 218.

The state relies on Rosario to support its contention that the trial justice did not err in determining that defendant had "opened the door" to being impeached based on his prior convictions for assault on police officers. We are of the opinion, however, that the facts of Rosario are different from the facts here. We emphasize, in particular, that in Rosario it was the

- 13 -

defendant who answered a specific question about one police officer with a broad, generalized statement about his respect for authority. See Rosario, 14 A.3d at 218. In contrast, here, the prosecutor was the first one to ask a broad leading question about defendant's sentiments towards the police by asking, "You don't like the police, do you?"[6] Prior to the prosecutor's asking this question, the defendant had not "opened the door" through any general declarations about his respect for authority. Indeed, we note that in both this first exchange and in the one which followed, it was the prosecutor who persisted in questioning defendant in such broad terms.[7] We conclude that defendant had not "opened the door" to these questions. We find no support in the record for the proposition that defendant had previously volunteered any broad declarations of his respect for either the police or law and order generally so as to "open the door" to the prosecutor's questions. Our careful review of the record compels us to the conclusion that the repeated broad questions about defendant's sentiments towards police officers in general elicited a response from defendant which then enabled the state to bring in defendant's prior convictions of assault against police officers. We are persuaded that these repeated questions constituted improper "manufacturing" of an issue to bring in evidence which the trial justice had previously ruled inadmissible.

Our conclusion is further buttressed by the fact that, during the pretrial motion in limine hearing, the prosecutor stated that he would use defendant's prior convictions only "if the defendant testifies and he gets up there and starts saying he's a peaceful guy, that he respects police, or something along those lines." (Emphasis added.) We are struck by the prosecutor's use of this very phrase in several different permutations during the course of defendant's cross-

---

[6] In phrasing the question thusly, we note that the prosecutor had essentially "painted defendant into a corner" where the only possible response was a broad statement of liking the police.

[7] As noted above, the prosecutor asked defendant "Because you respect police; right?" and then "And you wouldn't put your hands on a police officer."

examination. It was only after broadly leading questions along these lines that the prosecutor directly asked, "And you wouldn't put your hands on a police officer," thereby referring obliquely to defendant's prior convictions in such a way as to lead inevitably to further questions regarding the exact nature of those convictions. We conclude that these questions on cross-examination were improper.[8] Accordingly, we hold that the trial justice erred in permitting the state to impeach defendant's testimony using his prior convictions of assault against police officers.

Finally, this Court will address whether the trial justice's error was harmless. "In order to meet the harmless-error test, there must be proof 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" State v. Smith, 446 A.2d 1035, 1036 (R.I. 1982) (quoting Chapman v. California, 386 U.S. 18, 24 (1967)). This Court has listed various factors to be considered in determining whether an error was harmless,

> "including the relative degree of importance of the witness testimony to the prosecution's case, '* * * the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and * * * the overall strength of the prosecution's case.'" State v. Bustamante, 756 A.2d 758, 766 (R.I. 2000) (quoting State v. Texter, 594 A.2d 376, 378 (R.I. 1991)).

We are of the opinion that the trial justice's error in permitting the state to cross-examine the defendant concerning the exact nature of his prior convictions was not harmless. As previously noted, this case was largely devoid of physical evidence, rendering the credibility of each of the witnesses central to the case. We cannot be satisfied beyond a reasonable doubt that the

---

[8] We note that we do not believe the prosecutor acted deliberately in improperly cross-examining defendant. Indeed, we are satisfied that the prosecutor was fulfilling his duty as a zealous advocate for the state. We reiterate, however, our admonition in a recent case: "[w]hen a defendant is testifying at his trial, prosecutors and trial justices must be scrupulous to ensure that impeachment of defendant by reference to prior convictions or past criminal conduct is effected in a proper manner * * *." State v. Price, 68 A.3d 440, 448 (R.I. 2013).

improper admission into evidence of the defendant's prior convictions was not overly prejudicial. We are, moreover, especially reluctant to find the improper use of prior convictions to be harmless in the case at bar, when the improper cross-examination occurred to impeach the credibility of the defendant, whose liberty was directly at stake. Because we cannot conclude that the use of the defendant's prior convictions was harmless, we are perforce required to hold that their admission into evidence was a reversible error. Consequently, we conclude that the defendant is entitled to a new trial.

**IV**

**Conclusion**

For the foregoing reasons, the defendant's judgment of conviction is vacated. This case shall be remanded to the Superior Court for a new trial consistent with this opinion.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**      State v. Thomas Mercurio.

**CASE NO:**      No. 2012-219-C.A.
                          (P2/11-10A)

**COURT:**      Supreme Court

**DATE OPINION FILED:**   May 2, 2014

**JUSTICES:**      Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**      Associate Justice Gilbert V. Indeglia

**SOURCE OF APPEAL:**      Providence County Superior Court

**JUDGE FROM LOWER COURT**:

                          Associate Justice Edward C. Clifton

**ATTORNEYS ON APPEAL:**

                          For State:  Jane M. Mcsoley
                                      Department of Attorney General

                          For Defendant:  Janice M. Weisfeld
                                          Office of the Public Defender