July 12, 2024

**Supreme Court**

No. 2023-49-C.A.
(P1/19-1552A)

State                  :

v.               :

Milton Aponte.        :

NOTICE:  This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                          :

v.                             :

Milton Aponte.                 :

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Justice Lynch Prata, for the Court.**  This case came before the Supreme

Court on appeal by the defendant, Milton Aponte (defendant or Aponte), from a

judgment of conviction entered in the Superior Court following jury verdicts of

guilty on (1) one count of first-degree child molestation, in violation of G.L. 1956

§ 11-37-8.1 and § 11-37-8.2; (2) three counts of second-degree child molestation, in

violation of § 11-37-8.3 and § 11-37-8.4; and (3) one count of simple assault and

battery, in violation of G.L. 1956 § 11-5-3(a).

On appeal, Aponte argues that the trial justice erred in admitting the

complaining witness's out-of-court written statements, which were offered for the

truth of the matter asserted and did not fall within an exception to the rule against

hearsay.  He contends that the trial justice erred in admitting the complaining

witness's out-of-court written statement to her mother as nonhearsay because he

made no claim of recent fabrication and that the trial justice also erred in admitting the complaining witness's handwritten statement to the police as an excited utterance. The defendant further argues that the trial justice erred in excluding relevant video evidence of the complaining witness's demeanor while making her statement at the police station. Aponte submits that the erroneous admission of the complaining witness's statements was unduly prejudicial and contributed to his conviction, thus warranting a new trial. For the reasons set forth herein, we vacate the judgment of conviction and remand the case for a new trial.

## Facts and Travel

Sharon Withee (Ms. Withee) began dating defendant when her daughter, Mary,[1] was eight years old. Aponte moved in with Ms. Withee and Mary in 2012. Shortly after their relationship had begun, Ms. Withee gave birth to a son from a previous relationship, and she later had a child with defendant. In March 2018, the Department of Children, Youth, and Families (DCYF) removed Mary and her two brothers from their home.[2] Mary was placed into the Short-Term Assessment and Rapid Reintegration (STARR) Program, a temporary placement for young girls in need of housing. The day after Mary arrived at the STARR Program, she wrote a

---

[1] To protect the privacy of the complaining witness, a minor at the time of the alleged conduct, we have given her a fictitious name.

[2] Although the reasons that the children were taken into DCYF custody are not relevant or material to the issues of this appeal, we seek to clarify that the children were not removed from their home in relation to allegations made against defendant.

letter to her mother stating that defendant had sexually abused her and urged her mother to "never get back with him."

In the letter, Mary alleged that defendant repeatedly molested her while he was living with her, her mother, and her two brothers. Mary never sent the letter to her mother and instead kept it on her person at all times; she averred that she never intended to send it. On April 13, 2018, a staff member at the STARR program found the letter and informed Mary that they were required to report the alleged sexual abuse to DCYF.[3] After discussing the letter with a staff member, Mary went to the Pawtucket Police Department to give her statement.

At the police station, Mary broke down when pressed for details about the sexual abuse. She was unable to speak and instead scribbled a few words on a piece of paper to show the detective. The written statement consisted of fifteen words: "[h]e licked something while I was playing video games instead of watching my [little] brothers[.]" When the officer sought more information, Mary became upset and motioned to her vagina and asked to speak with a female officer.

Detective Carrie Hormanski then conducted a recorded interview of Mary. During the interview, Mary was visibly upset, and the detective asked her if she would feel more comfortable typing the statement instead. While typing out her statement, Mary listened to music on her headphones and hummed along. She

_____

[3] At the time, Mary had been engaged in counseling.

paused to ask the detective a question: "This has nothing to do with it, but you can go to jail for lying under oath, because I saw it on 'Law and Order.'" The detective responded "[y]es, you can -- it's a crime." Mary then asked, "[b]ut why? What if you're not religious?" The detective explained that "[i]t doesn't matter if you are religious or not." Mary then proceeded to finish typing her statement.

The defendant was charged with (1) one count of first-degree child molestation, in violation of § 11-37-8.1 and § 11-37-8.2; (2) three counts of second-degree child molestation, in violation of § 11-37-8.3 and § 11-37-8.4; and (3) one count of simple assault and battery, in violation of § 11-5-3. After a five-day jury trial, he was convicted on all counts. After the trial justice denied defendant's motion for a new trial, he was sentenced to a life term of imprisonment on count one, thirty years on counts two–four, and one year on count five. All sentences were to run concurrently. A timely notice of appeal was filed on August 31, 2022.[4] Additional facts will be discussed *infra* in the context of the issues raised on appeal.

**Standard of Review**

"It is a basic principle that the 'determination of whether an out-of-court statement meets an exception to the hearsay rule is within the trial justice's

---

[4] In this case, the judgment of conviction entered on September 16, 2022. Nevertheless, this Court has stated that it will treat an appeal as timely when a notice of appeal is filed before the judgment of conviction enters. *State v. Franco*, 225 A.3d 623, 628 n.5 (R.I. 2020).

discretion.'" *State v. White*, 296 A.3d 692, 701 (R.I. 2023) (quoting *State v. Martin*, 68 A.3d 467, 475 (R.I. 2013)). "[A] trial justice's ruling will be upheld unless abuse of discretion that prejudices the complaining party is shown." *Id.* (quoting *State v. Brown*, 9 A.3d 1240, 1247 (R.I. 2010)); *see also State v. Bergevine*, 942 A.2d 974, 978 (R.I. 2008) ("[T]he admission of a statement under an exception to the hearsay rule is within the sound discretion of the trial justice and shall not be overturned unless clearly erroneous.") (quoting *State v. Ruffner*, 911 A.2d 680, 689 (R.I. 2006)).

"With respect to evidentiary rulings, it is well established that questions as to the admissibility *vel non* of evidence are confided to the sound discretion of the trial justice." *State v. Mercurio*, 89 A.3d 813, 818 (R.I. 2014) (quoting *State v. Rosario*, 14 A.3d 206, 215 (R.I. 2011)). Accordingly, this Court will reverse a trial justice's decision to exclude evidence where the exclusion amounted to an abuse of discretion. *See, e.g.*, *State v. Rainey*, 175 A.3d 1169, 1182 (R.I. 2018); *State v. Husband*, 162 A.3d 646, 655 (R.I. 2017); *Mercurio*, 89 A.3d at 818.

**Discussion**

Before this Court, Aponte argues that the erroneous admission of the complaining witness's two written statements was unduly prejudicial. Aponte further contends that the trial justice abused his discretion in excluding relevant video evidence of the complaining witness's demeanor while giving her statement at the police station. We address each issue *seriatim*.

**The Letter**

The defendant submits that the trial justice abused his discretion by admitting Mary's letter to her mother as nonhearsay under Rule 801(d)(1)(B) of the Rhode Island Rules of Evidence, because the defense made no claim of recent fabrication. As such, defendant claims the letter was inadmissible hearsay. In response, the state argues that the letter was offered to rebut an express or implied charge of recent fabrication. The state maintains that the trial justice correctly admitted the letter as nonhearsay, exempt from the rules governing hearsay, as it was a prior consistent statement. At trial, the state sought to admit the letter into evidence as a nonhearsay statement offered to rebut an express or implied charge of recent fabrication, maintaining that the fabrication alleged by defendant occurred when the witness "engineered the allegations when she gave a formal statement to the Pawtucket Police." In relevant part, Rule 801(d)(1)(B) provides that a statement is excluded from the definition of hearsay if "[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is * * * consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of *recent fabrication or improper influence or motive* * * *." R.I. R. Evid. 801(d)(1)(B) (emphasis added).

It is well settled that out-of-court statements offered for their truth are inadmissible unless a recognized exemption or exception applies. *State v. Oliveira*,

127 A.3d 65, 82 (R.I. 2015). The Rhode Island Rules of Evidence provide that certain statements are exempt from the rules governing hearsay. *See* R.I. R. Evid. 801(d). This Court has clearly stated that Rule 801(d)(1)(B) "does not accord 'weighty, nonhearsay status to all prior consistent statements,'" a witness's "prior consistent statements may not be admitted to counter all forms of impeachment or to bolster the witness merely because she has been discredited." *State v. Briggs*, 886 A.2d 735, 751 (R.I. 2005) (brackets omitted) (quoting *Tome v. United States*, 513 U.S. 150, 157 (1995)). "Instead, the 'recent fabrication' language in Rule 801 creates a temporal requirement: 'the consistent statements must have been made before the alleged influence, or motive to fabricate, arose.'" *Id.* (brackets omitted) (quoting *Tome*, 513 U.S. at 158).

We have held that a prior consistent statement came within the purview of Rule 801(d)(1)(B) when the witness's statement preceded her meeting with the prosecution and police. *See State v. Barkmeyer*, 949 A.2d 984, 1005-06 (R.I. 2008). In *Barkmeyer*, defense counsel suggested that the child witness had been coached by the police and prosecutors. *Id.* The trial justice correctly held that the prior consistent statement fell within Rule 801(d)(1)(B) because it had been made before the witness had met with the prosecution or police. *Id.* at 1006. Likewise, in *State v. Kholi*, 672 A.2d 429 (R.I. 1996), this Court held that a statement had been properly excluded from the definition of hearsay where the defense had implied that the witness's

accusations were motivated by her intent to bring a civil suit against the defendant to obtain compensation from the Violent Crimes Indemnity Fund, and the prior consistent statement predated the motive to seek compensation. *See Kholi*, 672 A.2d at 438. In contrast, we have held that a prior consistent statement does not fall into the ambit of Rule 801(d)(1)(B) when the statement did not precede the alleged fabrication or coercion. *See Briggs*, 886 A.2d at 751 (holding that statements of alibi witnesses were properly excluded because the motive to afford defendant an alibi arose before the statements were made).

In the instant case, the defense alleged that the child's motive to fabricate the allegations against defendant arose long before she wrote the letter to her mother. While similar to the facts of *Barkmeyer*, where the child victim's statement preceded her meeting with the police and prosecutors, in this case, Mary's letter containing the allegation was drafted weeks prior to its discovery, prior to her meeting with the STARR worker, and before her statement to the detectives. *See Barkmeyer*, 949 A.2d at 1005-06. The key distinction here is that the defense had alleged that Mary's motive to fabricate the allegations dated back months, and even years, prior to her drafting the letter or meeting with the police. Unlike in *Barkmeyer*, where the defense argued that the child had been coached after meeting with the police and prosecution and was a suggestible child known to make up stories, in this case, Aponte made no claim of *recent fabrication*. *See Barkmeyer*, 949 A.2d at 1005-06.

In fact, his entire defense strategy centered on whether the child's allegations were fabricated, and he argued that the letter was drafted to support the allegations against him. At no point did the defense argue that Mary was a suggestible child, that her accusations were recently fabricated, or that she had been coached after writing the letter. When Mary's mother began dating defendant, her family of two quickly became a family of five, which brought significant changes to her life. Aponte argued that when he entered the picture, Mary took issue with his parenting style and her mother's diverted attention to her brothers, so she had begun to engage in attention-seeking behaviors. The defendant explained that Mary frequently stayed at her maternal grandmother's during this time because she was not getting along with him or her mother. The record is clear that Mary drafted the letter, where she urged her mother to end the relationship because of the alleged sexual abuse, after she was removed from the home by DCYF. Yet, Mary never gave the letter to her mother and it was instead inadvertently discovered at the STARR facility.

Unlike other cases, the crux of Aponte's defense was that Mary's motive to fabricate arose long before she drafted the letter. *See Barkmeyer*, 949 A.2d at 1005-06; *Kholi*, 672 A.2d at 438. Accordingly, we find the state's argument that the letter was admissible as nonhearsay under Rule 801(d)(1)(B) to rebut a charge of *recent fabrication* unavailing. The defendant maintained that the child's motive to fabricate the allegations initially arose when Aponte sought to discipline her for her behavioral

issues and it only increased when she was removed from the home. Given that the letter to her mother did not precede either of those events, the temporal requirement of Rule 801(d)(1)(B) was not met in this case. As such, the trial justice erred by admitting the letter, as it improperly bolstered the complaining witness's allegations.

### The Scribble

Next, defendant challenges the trial justice's admission of Mary's handwritten statement to the police that "[h]e licked something while I was playing video games instead of watching my [little] brothers" (the scribble). Aponte maintains that the admission of the scribble was clearly erroneous because it was an out-of-court written statement offered for its truth and did not fall within the excited-utterance exception to the hearsay rule, as the state claimed at trial. Specifically, he points out that the scribble was not a verbal statement and that it was written six weeks after the letter to her mother and years after the sexual abuse allegedly occurred. Aponte insists the statement was inadmissible hearsay. The state counters that defendant's "rigid interpretation of Rule 803(2) is misguided" and that the child's written statement is admissible as an excited utterance because, although it was made a significant amount of time after the alleged startling event, the stress was triggered by having to recall the incident, making the scribble sufficiently spontaneous to fall within the excited-utterance exception.

Under Rule 803(2), an excited utterance is "[a] statement relating to a startling event or condition made *while the declarant was under the stress of excitement caused by the event or condition*." R.I. R. Evid. 803(2) (emphasis added). "The rationale behind the excited utterance exception is that 'a startling event may produce an effect that temporarily stills the declarant's capacity of reflection and produces statements free of conscious fabrication.'" *State v. Oliveira*, 961 A.2d 299, 314 (R.I. 2008) (quoting *State v. Torres*, 787 A.2d 1214, 1222 (R.I. 2002)). A statement need not have been "strictly contemporaneous with the startling event" for it to be admissible as an excited utterance. *State v. Momplaisir*, 815 A.2d 65, 70 (R.I. 2003) (quoting *State v. Mendez*, 788 A.2d 1145, 1147 (R.I. 2002)). The test is whether, from a consideration of all the facts, the declarant "was still laboring under the stress of excitement caused by the event when he or she made the statement at issue." *State v. Morales*, 895 A.2d 114, 120 (R.I. 2006).

When claiming that a statement falls under the excited-utterance exception, the state bears "the burden of proving that the statement is spontaneous and was made before the declarant had an opportunity to contrive or misrepresent." *State v. Burgess*, 465 A.2d 204, 207 (R.I. 1983). "The guarantee of trustworthiness for the excited-utterance exception is assured as long as the declarant made the statements as an instinctive outpouring or an effusion." *State v. Krakue*, 726 A.2d 458, 462 (R.I. 1999) (brackets omitted) (quoting *State v. St. Jean*, 469 A.2d 736, 738 (R.I. 1983)).

*Compare State v. Oisamaiye*, 740 A.2d 338, 339-40 (R.I. 1999) (holding that statements by a nursing home patient made after he had calmed down from an earlier exciting experience were still given "in a state of nervous excitement"), *with Burgess*, 465 A.2d at 207 (concluding that statement declarant made to the fourth person who spoke with her after the incident was not admissible as an excited utterance). Whether a statement was in response to an inquiry is a factor in determining spontaneity but does not necessarily render the excited-utterance exception inapplicable. *See St. Jean*, 469 A.2d at 738-39 (holding that victim's statements made in response to police officer's questions at the scene of the crime less than five hours after the startling event admissible as excited utterances). Evidence of the declarant's demeanor may be necessary to determine whether a statement was a "spontaneous verbal reaction." *See State v. Jalette*, 119 R.I. 614, 621-22, 382 A.2d 526, 530-31 (1978); *see also State v. Poulin*, 415 A.2d 1307, 1310-11 (R.I. 1980) (explaining that prosecution's failure to introduce demeanor evidence precluded a finding of excited utterance).

The state did not meet its burden of demonstrating that Mary was still laboring under the stress of the alleged sexual abuse when she made her statement to the police. The complaining witness's written statement to police was not a verbal reaction made after she was assaulted, or shortly thereafter; it was made months, and even years, after the startling event allegedly occurred. We have reasoned that the

time requirement is more lenient in sexual assault cases because "the shock of the event often lasts longer and the outpouring may come only later, when a parent, friend, or officer is present." *Morales*, 895 A.2d at 120. Although we have noted that in cases of sexual assault the time requirement for Rule 803(2) is less demanding, especially when the victim is a child of tender years, we have never extended the exception to cases where the statement was made months or years after the startling event. *See Morales*, 895 A.2d at 120; *see also State v. Creighton*, 462 A.2d 980, 982 (R.I. 1983) (upholding admission of a statement by child sexual-assault victim to detective made roughly fourteen hours after the event); *State v. Souza*, 456 A.2d 775, 778 (R.I. 1983) (concluding that trial justice did not abuse discretion in admitting statements of child sexual-assault victim to his mother made six or seven hours after the incident); *State v. Nordstrom*, 104 R.I. 471, 477-78, 244 A.2d 837, 839-41 (1968) (noting that acts related by the declarant probably occurred about twenty-four hours before the admitted statement).

While the record was clear that the child was emotional when discussing the allegations with officers, we are not persuaded that her written statement qualifies as a "spontaneous verbal reaction" when it was made significantly long after the startling event at issue, i.e., the alleged sexual assaults. *See Jalette*, 119 R.I. at 621-22, 382 A.2d at 530-31 (complaining witness's statement made more than a day after alleged sexual assault "stretches the [excited] utterance exception far beyond its

breaking point" when prosecution failed to show statement was spontaneous response to stress of event).  Of note, at trial the prosecution did not meet its burden of demonstrating that Mary was still laboring under the stress of the alleged sexual abuse when she spoke to the detectives. *See Poulin*, 415 A.2d at 1311.  Instead, prosecutors argued that the scribble fell within the excited-utterance exception and the complaining witness testified that she was triggered by having to recall the events.  While having to discuss the details of a sexual assault allegation is certainly traumatizing for any victim, the excited-utterance exception attaches to the initial event, and the rationale behind the exception is that when the declarant made the statement, they were "still laboring under the stress of the nervous excitement engendered by the event * * * describe[d]." *Jalette*, 119 R.I. at 619, 382 A.2d at 529.  As such, the state failed to meet its burden of proving that Mary's written statement at the police station fell within the excited-utterance exception under Rule 803(2).  Accordingly, we conclude that the trial justice abused his discretion by admitting the scribble.

**Video Evidence of Complaining Witness's Demeanor at Police Station**

Aponte further argues that the trial justice erred by excluding relevant video evidence that would have depicted to the jury the complaining witness's demeanor while making her statement to police.  This evidence came before the jury through the testimony of the detectives but defense counsel sought to introduce a video of

- 14 -

Mary at the Pawtucket Police Station when she stopped typing her statement to ask the police if someone could go to jail for lying under oath. Aponte argues that the jury should have been able to see the complaining witness's demeanor at the police station in order to fully assess her credibility because his defense centered on whether the allegations against him were fabricated. He further contends that the video evidence was neither cumulative nor hearsay. In response, the state argues that the trial justice acted within his discretion to preclude the video as cumulative.

It is well established that the decision to admit or exclude evidence rests in the sound discretion of the trial justice. *Rainey*, 175 A.3d at 1182 ("When the issue before us concerns a trial justice's decision to either admit or exclude evidence, we examine that issue under an abuse-of-discretion standard."). "Cumulative evidence is evidence that tends 'to prove the same point to which other evidence has been offered.'" *White*, 296 A.3d at 706 (quoting *State v. Benitez*, 266 A.3d 1221, 1229 (R.I. 2022)); *see also State v. Watkins*, 92 A.3d 172, 189 (R.I. 2014).

With respect to the video evidence of Mary's conversation with the detective, the trial justice reasoned:

> "So my feeling is at this time there is nothing in the [twenty] second video that is new, different and would be more enlightening to this jury than what they are going to hear and see and describe in detail by both the complaining witness herself, who is the subject of the video and [two] detectives from Pawtucket Police Department. It is simply a video representation of what will be offered here in the

- 15 -

courtroom repeatedly by multiple witnesses including the complaining witness herself."

We agree. While the video may have depicted the witness's demeanor while making her statement to detectives, it was within the trial justice's discretion to exclude the video. *Rainey*, 175 A.3d at 1182. At trial, both the detective and the complaining witnesses testified as to the colloquy, including the circumstances surrounding the exchange and the demeanor of the witness, who was also subject to cross-examination. Accordingly, we discern no error in that regard.

### Harmless Error

Finally, this Court will address whether the trial justice's erroneous admission of the letter and the scribble was harmless. For its part, the state contends that, even if we conclude that the trial justice erroneously admitted the letter and the scribble, defendant's claimed errors were harmless because the evidence was cumulative and would not have impacted the outcome of the case. The defendant insists that the erroneous admission of these statements was "anything but harmless[,]" and that the state cannot prove beyond a reasonable doubt that the statements did not contribute to his conviction because, aside from the complaining witness's testimony, the record is devoid of other evidence of his guilt.

"In order to meet the harmless-error test, there must be proof beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *White*, 296 A.3d at 706 (quoting *Mercurio*, 89 A.3d at 822). This Court

has listed several factors to be considered in determining whether an error was harmless,

> "including the relative degree of importance of the witness testimony to the prosecution's case, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and the overall strength of the prosecution's case." *Mercurio*, 89 A.3d at 822-23 (deletions omitted) (quoting *State v. Bustamante*, 756 A.2d 758, 766 (R.I. 2000)).

We have explained that "the admission of hearsay evidence is not prejudicial when the evidence is merely cumulative and when the defendant's guilt is sufficiently established by proper evidence." *White*, 296 A.3d at 706 (brackets omitted) (quoting *State v. Robinson*, 989 A.2d 965, 979 (R.I. 2010)); *see also Benitez*, 266 A.3d at 1229; *State v. Micheli*, 656 A.2d 980, 982 (R.I. 1995); *State v. Angell*, 122 R.I. 160, 168, 405 A.2d 10, 14 (1979). "[T]he test to be applied is a retrospective one, administered at the close of all the evidence to determine whether the admission of certain evidence was harmless in light of all the evidence admitted on that point." *White*, 296 A.3d at 706 (quoting *Benitez*, 266 A.3d at 1229); *see also State v. Johnson*, 13 A.3d 1064, 1068 (R.I. 2011) ("[T]here is an inescapable conclusion that, even if there were a question about the admissibility of [certain] testimony, * * * such testimony was merely cumulative and therefore not prejudicial to [the defendant]."); *State v. Ramirez*, 936 A.2d 1254, 1267 (R.I. 2007) ("Viewing the

abundant evidence in this case that supports the jury's verdict, we are satisfied that admitting [a particular] out-of-court statement amounts, at best, to harmless error.").

We are not convinced that the erroneous admission of the letter and the scribble was harmless. In a child sexual-assault case, there is certainly no evidence stronger than a child's prior written statements to corroborate her allegations. As Aponte argues, Mary's letter to her mother and her written statement to the police were powerful pieces of evidence to which the jury undoubtedly gave great weight during their deliberations. Without the letter and the scribble, Mary's testimony would have been the only evidence to support her allegations; as such, we cannot say the "evidence was harmless in light of all the evidence admitted on that point." *White*, 296 A.3d at 706 (quoting *Benitez*, 266 A.3d at 1229). The state cannot prove beyond a reasonable doubt that the admission of these statements did not contribute to the defendant's conviction. Undeniably, the credibility of the complaining witness was central to the prosecution's case. *Compare id.* at 707 (concluding trial justice's erroneous admission of nurse's testimony harmless beyond a reasonable doubt because it was cumulative in light of other testimony and evidence), *with Mercurio*, 89 A.3d at 822-23 (holding admission of defendant's prior convictions was not harmless because case was "largely devoid of physical evidence, rendering the credibility of each * * * witness[] central to the case"). All of this to say, we are not satisfied beyond a reasonable doubt that the erroneous admission of the

complaining witness's prior written statements was not overly prejudicial. *See Mercurio*, 89 A.3d at 823. If the jury had not known of these potentially corroborative statements, we cannot say beyond a reasonable doubt that the defendant would have been convicted. Consequently, we determine that the erroneous admission of these statements was not harmless and conclude that Aponte is entitled to a new trial.

## Conclusion

For the reasons articulated in this opinion, we vacate the judgment of conviction and remand to the Superior Court for a new trial.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI 02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Milton Aponte. |
| **Case Number** | No. 2023-49-C.A.<br>(P1/19-1552A) |
| **Date Opinion Filed** | July 12, 2024 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Erin Lynch Prata |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Daniel A. Procaccini |
| **Attorney(s) on Appeal** | For State:<br><br>Devon Flanagan Hogan<br>Department of Attorney General |
| | For Defendant:<br><br>Megan F. Jackson<br>Rhode Island Public Defender |